### MRS. VERNON E. KIZER v. WILLIAM M. BOWMAN.

(Filed 28 March, 1962.)

**1. Appeal and Error § 47—**

The refusal to strike allegations from the complaint will not be disturbed when no prejudice resulted to defendant therefrom.

**2. Limitation of Actions § 12;　Pleadings § 25—**

Where the facts in regard to the accident in suit are alleged in the complaint, an amendment which characterizes defendant's conduct as amounting to gross negligence does not amount to a statement of a new cause of action notwithstanding that gross negligence may be essential to a recovery by plaintiff, since the conclusion of gross negligence may be deduced from the alleged facts, and therefore the action is not barred when the complaint is filed within the time limited even though the amendment is filed thereafter.

**3. Automobiles § 47—**

"Gross negligence" within the purview of the Florida statute requiring a showing of gross negligence in order for a gratuitous guest to recover against the driver of a car is not synonymous with culpable negligence in the law of crimes, but gross negligence lies between ordinary negligence and culpable negligence and may be defined as a course of conduct from which a reasonable and prudent man would know that injury to person or property would probably and most likely result.

**4. Same—**

Whether the driver of a car is guilty of gross negligence so as to constitute the basis for recovery by a gratuitous guest is ordinarily a question for the jury, and each case must be determined in accordance with its particular facts.

**5. Same—Evidence held sufficient to be submitted to the jury on the question of defendant's guilt of gross negligence.**

While speed alone is ordinarily insufficient to support a finding of gross negligence, evidence tending to show that defendant driver was traveling 65 miles per hour during a heavy rain with poor visibility, that he turned to his left side of the highway to pass a preceding truck without ascertaining whether he could do so in safety, that he then saw a car ap-

proaching from the opposite direction when it was only about 150 feet distant, that he then cut his car quickly to the right to get back into the right lane, resulting in loss of control of the car and injury to plaintiff guest, *is held* sufficient to be submitted to the jury under the Florida statute on the question of whether the driver was guilty of gross negligence.

**6. Same—**

Under the Florida statute, a guest passenger who pays, in accordance with previous agreement, one-half of the cost of gasoline and oil for the trip is not a gratuitous passenger.

**7. Damages § 5—**

Allegations that by reason of her injuries plaintiff had been forced to undergo painful and prolonged medical treatments, to wear splints and a cast by reason of broken ribs and back, and that she had been advised her injuries were permanent, *is held* sufficient basis for the admission of evidence and a charge by the court as to nursing, medical, and hospital bills.

SHARP, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Campbell, J.,* October Term 1961 of TRANSYLVANIA.

This is a civil action instituted by the plaintiff, a citizen and resident of Transylvania County, North Carolina, for the recovery of damages for personal injuries. The cause arose out of an automobile accident occurring on U. S. Highway No. 27, near Haines City, Florida, on 30 November 1957.

It is alleged that in November 1957 the defendant (who is a brother of the plaintiff) approached the plaintiff and advised her that his daughter (Mrs. W. K. Robinson) and her family had come to visit the defendant and his wife in Morganton, North Carolina, and that both families planned a week's trip to Florida, and expressed a desire that the plaintiff and her husband accompany them and share the expenses of the trip; that plaintiff and her husband had made several trips to Florida previously and were familiar with the roads and points of interest. It is further alleged that the defendant proposed that he would take the plaintiff and her husband in his 1957 Oldsmobile "88" automobile if the plaintiff and her husband would pay one-half of the gas and oil expense of the trip and one-third of the rent of a furnished apartment and cost of groceries during their stay in Florida; that plaintiff and her husband agreed to the proposal.

The group left for Florida from the defendant's home in Morganton on 25 November 1957. Plaintiff and her husband and defendant and his wife went to Florida in the defendant's automobile, and the Robin-

sons made the trip in a station wagon owned and operated by Mr. Robinson.

After spending several days at Delray Beach, Florida, they began the return trip to North Carolina on 30 November 1957. Mr. Robinson, driving his station wagon, left first, followed by the defendant driving his Oldsmobile. With the defendant in his automobile were his wife in the front seat, and the plaintiff and her husband with the Robinsons' infant daughter seated in a small car chair between them in the rear seat.

It is alleged in paragraph VI of the complaint as follows: "That around noon on said date, as defendant approached Haines City, Florida, on U. S. Highway #27, he was delayed by heavy traffic and lost contact with the automobile in front of him in which his daughter and her family were traveling; that it was raining hard at the time and visibility was poor and the asphalt highway over which defendant was traveling was slick; that, despite the hard rain, poor visibility and dangerous condition of the highway, the defendant speeded up his said automobile and drove along said highway at a rapid rate of speed; that defendant overtook a large truck traveling in the same direction along said highway, and, without slowing down or making any effort to ascertain if said movement could be made in safety, he negligently, carelessly and recklessly attempted to pass said truck; that when the defendant came abreast of the truck, he observed an automobile approaching him from the opposite direction; that the defendant thereupon, instead of passing said truck and driving onto his own side of the highway, as he could have done, he negligently, carelessly and recklessly jerked his said automobile suddenly and sharply to the right, throwing it into a skid, during which it turned completely around twice, weaving between two approaching automobiles and hurtling down said highway completely out of control for approximately 300 feet to an intersecting farm road where it struck a culvert with terrific force, bounced up and turned around in the air and landed in a swamp facing the direction from which it had come, and rocked violently back and forth sideways."

By leave of court, the plaintiff amended her complaint on 15 April 1961, by inserting the following: "VI-A. That the foregoing acts of the defendant constituted gross negligence and willful and wanton misconduct on the part of the defendant and such gross negligence and willful and wanton misconduct of the defendant caused the collision hereinabove described and was the proximate cause of the injuries which the plaintiff received and for which this action is brought."

It is further alleged in paragraph VII of the complaint: "That the terrific impact threw the plaintiff against the left side of said car and

then against the child's chair on her right with great force and violence, breaking two ribs on her left side, two ribs on her right side, tearing the ligaments in her left shoulder, breaking her backbone, and otherwise bruising and injuring her."

The plaintiff alleged that by reason of her injuries as aforesaid she was forced to undergo painful and prolonged medical attention; that she had been bandaged in rib splints for many weeks on account of her broken ribs; that she was forced to wear a steel and leather cast which reached from her neck to her hips, continuously for five months, and during the daytime for a year thereafter, and still has to wear said brace most of the time and has to use a special chair and bed because of her injuries; that she suffers excruciating and agonizing pain; that since her injury she has been totally disabled to work and that she has been informed and believes that her injuries are permanent.

The defendant answering the complaint denied all allegations of negligence, gross negligence, and wanton and willful misconduct on his part, but admitted that "plaintiff and her husband paid one-half of the expenses of the trip and one-third of the cost of an apartment and groceries" while in Florida.

Vernon E. Kizer, the husband of plaintiff, testified in pertinent part as follows: "As we traveled up this highway, #27, Mr. Robinson's car was in the lead. We were traveling in a heavy rain and we had lost sight of Mr. Robinson and his car and they had part of the lunch in their car and we had part in ours, and Mr. Bowman speeded up to overtake them and came in behind this truck loaded with farm workers. At that time we were traveling on an asphalt road two lanes wide. It was raining and visibility was poor. You couldn't see very far. When Mr. Bowman came up behind the truck * * * he cut to the left in an attempt to pass the truck * * * and pulled over into the left lane.

"I have an opinion that the speed Mr. Bowman was making as he came up behind this farm truck was 55 miles an hour. When Mr. Bowman pulled over into the left lane to pass the truck, he put the car in passing gear. Passing gear is a gear that gives the car a sudden burst of speed; you use it in attempting to pass a car or to take off in a hurry. After he put it in passing gear, there was a car coming down the highway on the same side we were on and he cut the car quickly to the right to get in his lane. * * * When he pulled his car into the right lane the car went into a spin and spun around the highway, and I don't know how it happened to get by the two cars that were coming. It swapped ends, went backwards and twisted around for approximately 300 feet, and then the right wheel hit a culvert intersecting the road on the right and bounced in the air and spun around and went over an embankment on the other side of this inter-

section and hit the bottom and rocked violently from side to side and threw us around in the car, and it was headed back in the direction we were coming when it stopped. At the time it came to a stop, we were out of the highway, off over an embankment. There must have been a shoulder of about three feet and a ditch around six feet deep. When it came to a stop, the automobile was in the bottom of the swamp of water, headed back in the direction we were coming from. When the car first started into this spin, Mr. Bowman said, 'Look out, it is going into a spin.' I have an opinion that the speed of the Bowman car at the time * * * the spinning started was 65 miles per hour. I have an opinion that the speed of the Bowman car at the time it struck the culvert at the end of its spininng was about 35 miles per hour.

"When the car ran in the ditch the passengers in the Bowman car were thrown violently in the car. * * *

"I would say the width of the intersecting road was 12 feet. * * * (T)he car skidded 288 feet from the time it first started into a spin until it came to the intersection."

The plaintiff's testimony concerning the accident was substantially the same as that of her husband. She did testify, however, that, "After the defendant got into the left lane, as soon as he possibly could he jerked the car back into the right lane to keep from hitting the car that was coming toward us. That is when it went into the spin. * * * When the car landed in the ditch it kept rocking and I would hit the baby's chair in the middle of the car. As a result of being thrown from side to side, I got this terrific pain across my back * * *. The pain first struck me when we hit the shoulder down off of the embankment. The pain was caused by a broken back and broken ribs. I had two broken ribs on each side, the left shoulder was torn loose, or the ligaments in it, and the right muscle in the right side. * * *"

The defendant offered no evidence and moved for judgment as of nonsuit which was denied.

After instructing the jury, the court submitted issues of gross negligence and damages, and the issues were answered in favor of the plaintiff. Judgment was entered accordingly and the defendant appeals, assigning error.

*Van Winkle, Walton, Buck & Wall; Ramsey, Hill & Smart for plaintiff.*
*Williams, Williams & Morris for defendant.*

DENNY, C.J.  The appellant's first thirteen exceptions and assignments of error are directed to the refusal of the court below to strike certain allegations in the complaint. However, in our opinion, the alle-

gations which the defendant sought to have stricken from the complaint were not prejudicial to him. Therefore, these exceptions and assignments of error based thereon are overruled.

Assignments of error Nos. 37 and 38 are directed to the failure of the trial court to sustain defendant's motion for judgment as of nonsuit interposed at the close of plaintiff's evidence and renewed when the defendant rested without offering evidence.

The defendant's motion for judgment as of nonsuit was based on two distinct grounds: (1) That the plaintiff's cause of action was barred by the three-year statute of limitations; and (2) that the plaintiff failed to make out a case of gross negligence as a guest passenger under the Florida statute.

It is true that the accident complained of in which the plaintiff was injured occurred on 30 November 1957 and the plaintiff amended her complaint as set out hereinabove on 15 April 1961. Even so, an examination of the amendment will disclose that no new facts were alleged. The pleader merely characterized the alleged acts theretofore set out in her complaint as constituting gross negligence and willful and wanton misconduct. The amendment did not allege a new cause of action.

"It is generally held that it is not necessary, in order to recover compensatory damages, to allege that the negligence complained of was gross, even where the right to recover depends on the existence of such degree of negligence." 65 C.J.S., Negligence, Section 187 (h), page 901, citing *City of Jacksonville v. Vaughn*, 92 Fla. 339, 110 So. 529.

In the last cited case it is said: "Where a declaration contains allegations charging such a state of facts, the existence of which constitute gross negligence, in cases where it is necessary to aver gross negligence, it is not necessary for the pleader to allege his conclusion that such facts constitute 'gross' negligence. The Court may determine from the allegations of the declaration whether or not gross negligence as a matter of law is sufficiently alleged in the declaration." *Cf. Nix v. English*, 254 N.C. 414, 119 S.E. 2d 220.

Section 320.59 of the Florida Statutes of 1959 reads as follows: "No person transported by the owner or operator of a motor vehicle as his guest or passenger, *without payment for such transportation,* shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or willful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or willful and wanton misconduct was the proximate

cause of the injury, death or loss for which the action is brought; provided, that the question or issue of negligence, gross negligence, and willful or wanton misconduct, and the question of proximate cause, and the issue or question of assumed risk, shall in all such cases be solely for the jury * * *." (Emphasis added.)

The leading case defining the term "gross negligence or willful and wanton misconduct," as used in the Florida guest statute, is *Carraway v. Revell, et al.*, Fla., 116 So. 2d 16, in which case the petitioner brought the action for recovery of damages for the death of his son while riding as a passenger in defendants' automobile. The case was tried without a jury and resulted in a verdict in favor of defendants.

The trial judge denied plaintiff's motion for a new trial, assigning as his reason, among others, "that gross negligence in a guest passenger civil action is the same in legal contemplation as culpable negligence in a manslaughter case and that, in order to sustain a finding of liability in a guest passenger case, there must be that degree of negligence which would be sufficient to support a manslaughter conviction where there is a death involved."

On appeal to the district court, it approved the action of the trial court in an exhaustive opinion and, among other things, said: " * * * (T)he law has established that the character of negligence necessary to sustain a conviction for manslaughter is the same as that required to sustain a recovery for punitive damages, or damages resulting from gross negligence or wilful and wanton misconduct under the guest statute. * * *"

The Supreme Court of Florida said: "We agree with the district court (112 So. 2d 75) 'that the character of negligence necessary to sustain a conviction for manslaughter is the same as that required to sustain a recovery for punitive damages,' but we do not agree with the remainder of the court's holding, *viz.:* 'or damages resulting from gross negligence or wilful and wanton misconduct under the guest statute.' This is too broad a leap."

The Court further quoted from the case of *Franklin v. State,* 120 Fla. 686, 163 So. 55, 56, which held: " 'Gross negligence' and 'culpable negligence' are not necessarily synonymous, though culpable negligence might be gross negligence and gross negligence might be culpable negligence."

The Court also pointed out that there is a distinction between gross negligence and willful and wanton misconduct, although the Court had held otherwise in a number of earlier decisions. *O'Reilly v. Sattler,* 141 Fla.770, 193 So. 817; *Jackson v. Edwards,* 144 Fla. 187, 197 So. 833; *DeWald v. Quarnstrom,* Fla., 60 So. 2d 919. The Court said: "We hold that a guest under the statute may not lawfully recover from an

owner or operator of a vehicle for simple or ordinary negligence; that he may recover for gross negligence which is that kind or degree of negligence which lies in the area between ordinary negligence and wilful and wanton misconduct sufficient to support a judgment for exemplary or punitive damages or a conviction for manslaughter. In doubtful cases, the question of whether such negligence is ordinary or gross is, as we have heretofore held, one which under appropriate instructions should be submitted to the jury." The case was remanded to the lower court for further proceeding in accord with the Court's opinion.

In the case of *Bridges v. Speer*, Fla., 79 So. 2d 679, the Court said: "From the very beginning, the courts have encountered great difficulty in attempts to define any clear and distinct line to separate simple negligence from gross negligence. The difficulty is inherent in the question itself because it relates to different degrees of similar conduct. Perhaps no rule can ever be devised which will definitely separate one from the other. * * * We think the rule which would more nearly solve the problem than any other would be one which recognized that simple negligence is that course of conduct which a reasonable and prudent man would know *might* possibly result in injury to persons or property, whereas gross negligence is that course of conduct which a reasonable and prudent man would know would probably and most likely result in injury to persons or property. * * *"

In *Douglass v. Galvin*, Fla., 130 So. 2d 282, the plaintiff was a guest passenger in the defendant's sport car. Defendant was driving the car on Old Combee Road, which was asphalt, 16 to 18 feet wide, and had a wavy contour; the shoulders were in poor condition. The road was straight for a distance of about nine-tenths of a mile. There were no signs warning of a curve or specifying any speed. The defendant, however, had been over this road once or twice before. The road curved to the right. Defendant, after turning on this road, proceeded at a speed of from 60 to 65 miles an hour. When he came to the curve he did not apply his brakes, but "down-shifted." The left wheels went off the pavement on the left or outside curve, the car having slowed down to 50 or 55 miles an hour. The car ran off the highway, turning over twice, injuring the plaintiff. The trial resulted in a verdict for plaintiff and upon appeal the judgment was affirmed. The Court cited and quoted with approval the quoted portions set out hereinabove from the opinion in *Carraway v. Revell, supra,* and the above quoted portion from the opinion in *Bridges v. Speer, supra.*

The Supreme Court of Florida, in considering cases involving Florida's guest statute, has repeatedly said that each case must stand or fall on its own facts.

In the case of *Myers v. Korbly,* Fla., 103 So. 2d 215, the accident occurred between 11:00 and 12:00 p.m. at a curve on Bayshore Boulevard near Inman Avenue in Tampa. The speed was 40 miles per hour. The road surface was dry and the boulevard was well lighted. The defendant's son was 16 years of age and was driving defendant's Ford sedan on Bayshore Boulevard. The driver entered the boulevard after stopping at a traffic signal and then traveled in a southerly direction for two or three blocks. The car failed to negotiate a curve after sliding 61 feet to the westerly curve of the roadway, left the boulevard, slid another 76 feet to a palm tree with which it collided, then slid another 61 feet to a second palm tree which was uprooted and broken. The Court, in affirming the verdict for the plaintiff in this case, quoted with approval from the case of *Cadore v. Karp,* Fla., 91 So. 2d 806, as follows: "We think that, in the circumstances here, the jury could have found that Mr. Karp failed to exercise that degree of 'slight care' which is the equivalent of 'gross negligence.' *Faircloth v. Hill, supra* (Fla., 85 So. 2d 870). So it was error to withdraw the case from the jury and direct a verdict for the defendant * * *."

Ordinarily, speed alone will not be deemed sufficient to support a finding of gross negligence or willful and wanton misconduct. However, the jury had the right to consider all the facts and circumstances involved at the time of this collision, including speed. The evidence tends to show that the defendant's car was traveling 65 miles an hour at the time the defendant was confronted with an approaching car from the opposite direction in the lane in which the defendant was traveling in his effort to pass the farm truck. The approaching car was only about 150 feet from the defendant when he cut his car quickly to the right to get in the right lane, allegedly causing it to spin, and that it skidded about 288 feet. The jury had the further right to consider the condition of the road, the heavy rain, the poor visibility, and the passing of the farm truck without ascertaining whether or not such passage could be made in safety; and when so considered, we think the evidence was sufficient to warrant its submission to the jury and to support a finding that the defendant failed to exercise that degree of "slight care" which is held in the Florida cases to be the equivalent of "gross negligence." *Cadore v. Karp, supra; Faircloth v. Hill,* Fla., 85 So. 2d 870. See also *Sea Crest v. Burley,* Fla., 38 So. 2d 434; *Brown v. Roach,* Fla., 67 So. 2d 201; *Myers v. Korbly, supra; Reynolds v. Aument,* Fla., 133 So. 2d 562; *Cole v. Morse,* 85 N.H. 214, 155 A. 694; *Hollander v. Davis,* 120 F. 2d 131.

Whether the conduct of an automobile driven under given circumstances constitutes gross negligence, is generally a question of fact for the jury. *Smith v. Turner,* 178 Va. 172, 16 S.E. 2d 370.

In *Grand Trunk R. Co. v. Ives*, 144 U.S. 408, it is said: "What may be deemed ordinary care in one case, may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court."

In the case of *Wilson v. Eagle* (Dist. Ct.), Fla., 120 So. 2d 207, cited by the defendant, the court held the allegations of the complaint were insufficient to meet the test for a statement of a cause of action under the guest statute. Also, in the case of *Godwin v. Ringley* (Dist. Ct.), Fla., 126 So. 2d 163, the evidence tended to show that the accident was caused by the unfamiliarity of the defendant with the power steering of his newly acquired automobile. The court held the evidence fell short of the test prescribed to establish gross negligence. Likewise, in the case of *DeWald v. Quarnstrom, supra,* cited and relied upon by the defendant, the case was decided during the era prior to the decision in *Carraway v. Revell, supra,* when the Florida court had not abandoned the view that "gross negligence" and "willful and wanton misconduct," appearing in the Florida automobile guest statute, were synonymous. It must be conceded that prior to the decision in the *Carraway* case, the decisions of the Florida Court interpreting the provisions of the Florida guest statute were in hopeless conflict. University of Florida Law Review, Volume 11, 1958, page 287, *et seq.* These cases, however, in our opinion, are not controlling on the factual situation in the instant case. These assignments of error are overruled.

Even so, in our opinion, the contract entered into between the plaintiff and her husband with the defendant, which required the plaintiff and her husband to pay one-half of the gas and oil expense of the trip from Morganton, North Carolina, to Florida and return, constituted payment within the meaning of the Florida guest statute. Consequently, we think, in the trial below, the plaintiff was required to assume a greater burden than the Florida statute requires.

In the case of *Teders v. Rothermel,* 205 Minn. 470, 286 N.W. 353, the plaintiff, the defendant, and two others planned a motor trip from Omaha, Nebraska, to Florida and return in defendant's car. There was an advance agreement that each would pay one-fourth of the gas and oil. Accordingly, each of the four did contribute to a fund from which these expenses were paid. In Florida the plaintiff was injured in a collision caused by defendant's negligence. The Minnesota Court, in construing the Florida guest statute, said: "To be within its reach the rider in the car of another must not only be 'guest or passenger,' but also riding 'without payment for such transportation.' It is significant that the thing determinative is not 'hire' or 'compensation,' but 'payment.' 'Compensation,' accurately used, means payment in money, or

other benefit, which will compensate in the strict sense, that is, make even, or be measurably the equivalent of that for which it is given. *Kerstetter v. Elfman, supra* (327 Pa. 17, 192 A. 663). 'Hire' might apply only where both machine and driver are hired for the occasion.

"The words of the Florida law can properly be given no such narrow scope. Payment is all that is required. The amount of money or other thing constituting the payment need not compensate or make even, nor need it be given, in the technical sense, as 'hire' of driver and car. Any sum agreed upon as payment and paid, as under the facts presented by these pleadings, amounts to payment for transportation so as to prevent application of the statute."

Likewise, in *Katz v. Ross*, 117 F. Supp. 523, the plaintiff and his wife accompanied the defendant and his wife from Pittsburgh, Pennsylvania, to Florida. The plaintiffs agreed to pay $100.00 to the defendant as part of the cost of operating the defendant's car on the trip, and did pay the agreed amount to defendant. Plaintiffs were injured in an accident which occurred near New Smyrna Beach, Florida. The court submitted to the jury the question whether or not the plaintiffs did pay for their transportation. The jury returned a verdict in favor of plaintiffs and awarded them damages. On appeal, the Third Circuit Court of Appeals, 216 F. 2d 880, affirmed the judgment of the district court.

The general rule is stated in Anno: Automobile — Guest or Passenger, 10 A.L.R. 2d 1351, *et seq.*, at page 1373: "Where the agreement that the occupant should contribute to the cost of operating the car was entered into before the start of the trip, or so as to make him legally obligated for such contribution, or where it otherwise appears that the transportation was given in consideration of such contribution, it has generally been held, under the 'payment' statutes, that the occupant is entitled to the ordinary care owed to a passenger for hire," citing cases from many jurisdictions.

On the other hand, in the last cited authority, at page 1376, it is stated: "However, a merely incidental or gratuitous contribution to trip expenses will not constitute 'payment' within an automobile guest statute entitling the occupant of an automobile to the exercise of ordinary care for his safety." *McDougald v. Couey*, 150 Fla. 748, 9 So. 2d 187; *Yokom v. Rodriguez*, Fla., 41 So. 2d 446. See also *Clodfelter v. Wells*, 212 N.C. 823, 195 S.E. 11 (applying the South Carolina statute); *Morse v. Walker*, 229 N.C. 778, 51 S.E. 2d 496 (applying the Virginia statute).

Appellant's assignments of error Nos. 18, 19 and 20 are to the admission of evidence, over defendant's objection, as to nursing, medical, hospital and other expenses incurred as a result of plaintiff's injuries,

without these items having been pleaded as special damages. The defendant likewise assigns as error that portion of the charge appearing in parentheses as follows: "The court instructs you that the measure of damages, if you reach that question, is as follows: If the plaintiff is entitled to recover at all she is entitled to recover as damages one compensation in a lump sum, for all of her injuries, past, present, and prospective, in consequence of the defendant's acts and conduct, as previously defined to you by the court. (These damages are understood to embrace indemnity for actual loss of time, nurses, medical expenses, loss from inability to perform any of her ordinary duties.)"

The plaintiff alleged in her complaint that by reason of her injuries she had been forced to undergo painful and prolonged medical treatments; to wear splints on account of her broken ribs, and to wear a steel and leather cast (brace), which reached from her neck to her hips, continuously for five months, and during the daytime for a year thereafter; that since she was injured she has been totally disabled to work, and that she has been advised that her injuries are permanent.

We think the rule applicable to damages in this case, and to the admission of evidence as to the cost of nurses, medical expenses, hospital bills, loss of time, *et cetera,* is well stated in *Sparks v. Holland,* 209 N.C. 705, 184 S.E. 552: "The third assignment of error is to the court's permitting the plaintiff to testify as to the amount of the hospital bills paid by him when there was no specific allegation in the complaint as to such bills. The complaint alleges 'that by reason of the carelessness and negligence of the defendant, which was the proximate and sole cause of plaintiffs' injury, * * * the plaintiff has been damaged in the sum of $3,500.' A liberal interpretation of this allegation would permit the proof of hospital bills paid in connection with the injuries complained of since 'in this class of cases the plaintiff is entitled to recover as damages one compensation for injuries, past and prospective, in consequence of the defendant's wrongful or negligent acts. These are understood to embrace indemnity for actual nursing and medical expenses and loss of time, or loss from inability to perform ordinary labor, or capacity to earn money.' " See also *Helmstetler v. Duke Power Co.,* 224 N.C. 821, 32 S.E. 2d 611; *Mintz v. R.R.,* 233 N.C. 607, 65 S.E. 2d 120; *Owens v. Kelly,* 240 N.C. 770, 84 S.E. 2d 163. These assignments of error are overruled.

We concede that some of the additional assignments of error point out what might be termed technical errors; however, we do not think any prejudicial error has been shown that would justify a new trial.

In the trial below, we find

No error.

SHARP, J., took no part in the consideration or decision of this case.