IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1090

Filed 2 July 2024

Mecklenburg County, No. 17 CRS 226368

STATE OF NORTH CAROLINA

      v.

PHILLIP ANDREW BARKER, Defendant.

Appeal by defendant from judgment entered 14 December 2022 by Judge Robert C. Ervin in Mecklenburg County Superior Court. Heard in the Court of Appeals 30 April 2024.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Jonathan J. Evans, for the State.*
>
> *Drew Nelson for defendant-appellant.*

DILLON, Chief Judge.

Defendant, a police officer, was convicted of misdemeanor death by motor vehicle for causing the death of a pedestrian he struck with his patrol car while rushing to the scene of an emergency. We conclude Defendant received a fair trial, free of reversible error.

I.    Background

At approximately 3:20 A.M. on 8 July 2017, Defendant Phillip Barker, an officer with the Charlotte-Mecklenburg Police Department ("CMPD"), struck and

killed a pedestrian with his vehicle as he was driving faster than the posted speed limit while traveling to an emergency scene where he was needed.

Defendant was charged with involuntary manslaughter. He was convicted by a jury of the lesser-included crime of misdemeanor death by vehicle. Defendant was sentenced to sixty days in custody, which was suspended for twelve months of unsupervised probation. He appeals.

## II.    Analysis

Defendant presents multiple arguments on appeal, which we address in turn.

### A. N.C. Gen. Stat. § 20-145

Defendant's first arguments concern the applicability of N.C. Gen. Stat. § 20-145 ("When speed limit not applicable"), which exempts law enforcement officers from speed limit regulations when they are "in the chase or apprehension of" criminal suspects:

> The speed limitations set forth in this Article shall not apply to vehicles when operated with due regard for safety under the direction of the police *in the chase or apprehension of* violators of the law or of persons charged with or suspected of any such violation[.] . . . This exemption shall not, however, protect the driver of any such vehicle from the consequence of a reckless disregard of the safety of others.

N.C. Gen. Stat. § 20-145 (2023) (emphasis added).

Defendant essentially argues that it is legally impossible for him to have been acquitted of involuntary manslaughter but convicted of misdemeanor death by motor

vehicle based on his speeding.

Here, the jury was instructed that the difference between the two crimes is that a conviction for involuntary manslaughter required the jury to find Defendant acted with "culpable negligence." A conviction for misdemeanor death by motor vehicle, however, merely required a finding that Defendant caused the victim's death by his act of driving in violation of the law, but *not* in a way which amounted to "gross negligence."

Defendant contends that "culpable negligence" and "gross negligence" are the same *and that*, based on G.S. 20-145, he could not be convicted of speeding unless he acted out of gross negligence. Therefore, he contends the jury should have never been instructed on the misdemeanor, as it is illogical for the jury to find that he was not culpably negligent (in acquitting him for involuntary manslaughter) but to also find that he *did* break a law (speeding) which necessarily requires (based on G.S. 20-145) that the jury to find he acted with culpable/gross negligence in his speeding.

We first address the applicability of G.S. 20-145 in this case. The plain language of the statute suggests that a police officer is not culpable for speeding if he speeds while "in a chase or apprehension" of a suspect, so long as he is driving "with due regard for [the] safety" of others. *Id.* Based on the jurisprudence of our State, as explained below, the statute applies, not only when an officer is in hot pursuit of a suspect, but also when he is hurrying to the scene of an emergency. Further, under our case law interpreting G.S. 20-145, an officer cannot be guilty of speeding if he did

not act with gross negligence.

In a 1999 case in which a high-speed pursuit by police resulted in a crash, our Supreme Court stated that, based on G.S. 20-145, "in any civil action resulting from the vehicular pursuit of a law violator, the gross negligence standard applies in determining the officer's liability." *Parish v. Hill*, 350 N.C. 231, 238, 513 S.E.2d 547, 551 (1999).

In 2014 and again in 2022, our Court held that G.S. 20-145 is "not only applicable to the pursuit of a law violator, but [is] also applicable when an officer is 'emergency response driving' to the scene of an incident." *Est. of Graham v. Lambert*, 282 N.C. App. 269, 275, 871 S.E.2d 382, 387 (2022) (citing *Truhan v. Walston*, 235 N.C. App. 406, 413, 762 S.E.2d 338, 343 (2014)). That is, these decisions suggest that the exemption may apply when an officer is hurrying to a scene, not just when (s)he is in hot pursuit of a suspect. Our 2022 decision involved in part the application of G.S. 20-145 in a claim against an officer in his individual capacity, as well as in his official capacity and against the city for whom he worked.

In 2024, after briefing was completed in the present case, our Supreme Court issued its opinion in an appeal from our decision in *Graham*. *See Est. of Graham v. Lambert*, 385 N.C. 644, 898 S.E.2d 888 (2024). The Court, though, only considered the claims against the officer in his official capacity and against the city, as our decision regarding the claims against the officer in his individual capacity was not appealed. *Id.* at 646–47, 898 S.E.2d at 892. In reversing our decision, the Supreme

Court held that G.S. 20-145 does not apply to claims against a governmental entity or an individual in his official capacity, but only to claims against one in his individual capacity. *See id.* at 658, 898 S.E.2d at 900. In *dicta*, in reminding that G.S. 20-145 does not exempt officers for gross negligence, the Supreme Court arguably suggested that the statute only applies to hot pursuits, and not to situations where an officer is hurrying to a location: "We also clarify the legal framework for suits to which N.C.G.S. § 20-145 (2023) applies. That statute exempts police officers from speed limits when chasing or apprehending criminal absconders. But it does not shield officers for their gross negligence." *Graham*, 385 N.C. at 646, 898 S.E.2d at 892. The Court, though, never *expressly* overruled our Court's holding in *Graham* that expands the application of G.S. 20-145 to situations where an officer is hurrying to a scene. Accordingly, we remain bound by our decisions. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").

Here, though, we disagree with Defendant's arguments relating to G.S. 20-145. Rather, we conclude that it is logically possible under the law and, therefore, permissible for an officer to be convicted of misdemeanor death by motor vehicle where he causes the death by speeding while in hot pursuit of a suspect or while hurrying to an emergency scene, for the reasoning below.

Admittedly, there are cases which describe "gross negligence" and "culpable

negligence" with very similar, if not identical, language. *See, e.g., State v. Blankenship*, 229 N.C. 589, 595, 50 S.E.2d 724, 729 (1948) (describing "culpable negligence" as "an intentional, willful, or wanton violation of a statute"); *Yancey v. Lea*, 354 N.C. 48, 52, 550 S.E.2d 155, 157 (2001) (describing "gross negligence" as "willful and wanton conduct"). However, there are cases which suggest that there may be slight differences between the terms. *See Kizer v. Bowman*, 256 N.C. 565, 571, 124 S.E.2d 543, 548 (1962) (recognizing that under Florida law "[g]ross negligence" and "culpable negligence" are not necessarily synonymous). For instance, there are several cases which suggest that culpable negligence is a high form of gross negligence, specifically that "[c]ulpable negligence is such gross negligence or carelessness as 'imports a thoughtless disregard of consequences' or a 'heedless indifference to the safety and rights of others.' " *See State v. Thompson*, 118 N.C. App. 33, 36, 454 S.E.2d 271, 273 (1995) (quoting *State v. Everhart*, 291 N.C. 700, 702, 231 S.E.2d 604, 606 (1977)).

However, presuming "gross negligence" is the same as "culpable negligence," we conclude that it was logically possible for the jury to convict Defendant of misdemeanor death by motor vehicle based on his speeding, based on a shifting of burden of proof. Indeed, to prove Defendant guilty of involuntary manslaughter, the burden was *on the State* to prove beyond a reasonable doubt that Defendant acted with culpable negligence. However, to prove Defendant guilty of misdemeanor death by motor vehicle, the State only needed to prove that Defendant was speeding. Based

on our jurisprudence, the State had no burden to prove that Defendant was *not* acting with gross negligence to show that Defendant was guilty of speeding. Rather, based on our case law, under G.S. 20-145 the burden was *on Defendant* to prove to the satisfaction of the jury (as an affirmative defense to speeding) that he was *not* acting with gross negligence while he was speeding. *See State v. Flaherty*, 55 N.C. App. 14, 22, 284 S.E.2d 565, 571 (1981).

Here, It is possible that the jury was not satisfied that Defendant had met his burden of showing to the jury's satisfaction that he was not grossly negligent, and, therefore, found that Defendant caused the victim's death while violating our laws against speeding. But, at the same time, the jury could still not be convinced beyond a reasonable doubt that the State met its burden of showing Defendant was grossly negligent, thereby justifying their verdict of "not guilty" on the involuntary manslaughter charge.

We note Defendant's challenge to the trial court's jury charge regarding G.S. 20-145 and misdemeanor death by vehicle:

> If you find, ladies and gentlemen, from the evidence beyond a reasonable doubt that on or about the alleged date, *the Defendant violated the law of this State concerning or governing the operation of motor vehicles, if the Defendant has failed to satisfy you that he was exempt from those statutes,* or if the Defendant satisfied you that he was exempt from those statutes [but] that he acted with reckless disregard for the safety of others, and that the Defendant's violation proximately caused the death of the alleged victim, then it would be your duty to return a verdict of misdemeanor death by vehicle.

> However, if you do not so find, or if you have a reasonable
> doubt as to one or more of these things, then it would be
> your duty to return a verdict of not guilty.

(Emphasis added). The instructions properly place the burden on Defendant that he was exempt under G.S. 20-145 for speeding.

In any event, Defendant concedes that he did not object to the instructions at trial, and therefore he asks for plain error review. *See State v. Lawrence*, 365 N.C. 506, 512, 723 S.E.2d 326, 330 (2012). The State argues Defendant has waived appellate review because any error was invited by Defendant. *See State v. Wilkinson*, 344 N.C. 198, 235–36, 474 S.E.2d 375, 396 (1996). Even assuming Defendant did not invite error and reviewing under Defendant's requested standard of review, we conclude any error did not rise to the level of plain error. "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334 (cleaned up).

Defendant also challenges the sufficiency of the evidence to submit the charge of misdemeanor death by vehicle to the jury. We conclude the record contains sufficient evidence showing that Defendant violated North Carolina law by speeding and that he failed to show that he was exempt under G.S. 20-145. The State presented evidence tending to show that Defendant was driving approximately 100

miles per hour in a 35 miles per hour zone. The State also presented evidence concerning the reckless disregard for the safety of others element; for example, a driving instructor from the CMPD training academy testified that Defendant was not abiding by CMPD's directives for emergency response driving because Defendant did not slow down to clear intersections and was "outrunning his headlights" by traveling at a speed faster than his headlights could shine to illuminate potential hazards in the road in front of him.

For the reasoning above, we do not agree with Defendant that the trial court erred by failing to set aside the verdict *ex mero motu*. "Failure to set aside the verdict *ex mero motu* would be reviewable only in the situation where the jury's verdict is manifestly unjust and against the greater weight of the evidence." *State v. Mack*, 81 N.C. App. 578, 584, 345 S.E.2d 223, 226–27 (1986). Here, the jury's verdict convicting Defendant of misdemeanor death by vehicle is neither manifestly unjust nor against the greater weight of the evidence. Thus, the trial court did not err in sustaining the verdict. For the same reasoning, we disagree with Defendant that his trial counsel provided ineffective assistance of counsel by failing to move to set aside the verdict.

## B.     The State's Closing Argument

Defendant argues the trial court should have intervened *ex mero motu* during the State's closing argument.

"The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks are so

grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*." *State v. Parker*, 377 N.C. 466, 471, 858 S.E.2d 595, 599 (2021) (citation omitted).

Defendant contends the State's closing argument was "designed to place the jury in the shoes of the victim . . . by framing the case against [Defendant] as being one in which he had, allegedly, harmed the public, including members of the jury." Specifically, Defendant points to the State's comments that Defendant "broke that level of trust that you had a right to expect of him in the performance of his duties" and "potentially [endangered] the citizens [Defendant] swore [he] would protect" by not following his training.

Our Supreme Court has held that "[a]rguments that ask the jurors to place themselves in the victim's shoes are improper." *State v. Prevatte*, 356 N.C. 178, 244, 570 S.E.2d 440, 476 (2002) (citation omitted). However, comments portraying the victim as a "typical community member" are allowed. *See id.*

Here, the State's comments appear intended to illustrate how the victim in this case was a typical citizen like the jurors. It does not appear that the State was asking the jurors to place themselves in the victim's shoes.

Thus, Defendant fails to meet the high bar required to show that the trial court erred by failing to intervene *ex mero motu* during closing arguments.

NO ERROR.

Judges HAMPSON and GRIFFIN concur.