SHIRLEY KAY G. WARD v. DOLPHUS FRANKLIN WENTZ, JR.

No. 7326SC314

(Filed 19 December 1973)

1. Damages §§ 3, 13— connection between accident and necessity for medical treatment — reasonableness of medical expenses — competency of evidence

   In an action for damages for personal injuries sustained by plaintiff when her vehicle was struck by defendant's vehicle, the trial court did not err in excluding plaintiff's evidence concerning certain medical expenses incurred by her subsequent to the accident (1) where plaintiff's evidence that the medical attention she received was reasonably necessary for proper treatment of her injuries consisted only of plaintiff's assertion that medical expenses incurred by her were "definitely related to the accident," and (2) where plaintiff presented no evidence as to the reasonableness of the expenses incurred other than to offer evidence of the amounts charged.

2. Appeal and Error § 49— failure of record to show excluded evidence — no prejudice

   Exclusion of a medical witness's testimony cannot be held prejudicial where the record fails to show what the testimony would have been.

3. Damages §§ 3, 13— personal injury — competency of medical testimony

   In an action for damages for personal injuries sustained by plaintiff in an automobile accident four years earlier, the trial court did not err in excluding evidence as to an examining physician's prognosis where the prognosis was based entirely upon what plaintiff had told him during her visit with him on the day before the trial, nor did the court err in sustaining defendant's objection to a hypothetical question

which called for the doctor's opinion as to whether plaintiff would have any permanent partial disability.

APPEAL by plaintiff from *Snepp, Judge,* 4 December 1972 Schedule "B" Civil Session of Superior Court held in MECKLENBURG County.

In this civil action commenced 28 December 1971 plaintiff seeks damages for personal injuries received 11 January 1969 when the car she was driving was struck in the rear by defendant's vehicle while plaintiff's car was stopped at a red traffic light. Defendant stipulated liability, and the case was submitted to the jury on the single issue of damages.

Plaintiff testified that the collision threw her forward, causing her head to strike the window on the left-hand side and her neck and chest to strike the steering wheel. She was examined at the hospital emergency room, where x-rays showed no fractures and she was diagnosed as having an acute cervical sprain and a contusion on her right chest. Medicine was prescribed, she was referred to an orthopedic surgeon for further checking, and she was released without hospitalization. Other evidence offered by plaintiff as to her injuries, her loss of earnings, and her medical expenses, will be referred to in the opinion.

Defendant offered no evidence. The jury answered the damage issue in the amount of $2,500.00. From judgment on the verdict, plaintiff appealed.

*Wayne M. Brendle and John D. Warren for plaintiff appellant.*

*Sanders, Walker & London by James E. Walker and Robert G. McClure, Jr., for defendant appellee.*

PARKER, Judge.

Plaintiff assigns error to rulings of the trial court excluding evidence concerning certain medical expenses incurred by her in the State of Florida. Plaintiff testified that at the time of the accident, which occurred on 11 January 1969, she lived in Charlotte, N. C., and that in October 1969 she moved to Florida, where she resided until 28 February 1972, when she came back to Charlotte to live. Evidence was admitted as to medical expenses incurred by plaintiff and treatment prescribed for her

while she remained in Charlotte during the period immediately following the accident. In this connection Dr. Charles F. Heinig, the orthopedic surgeon consulted by plaintiff, testified that he examined plaintiff on 13 and 23 January 1969 and found no bone injury and "no evidence of any black or blueness or swelling." Dr. Heinig diagnosed her injury as a "mild cervical sprain" for which he prescribed an analgesic and muscle relaxant. He reassured plaintiff that she would not have any permanent disability and suggested that she return to work. Dr. Heinig did not see plaintiff after 23 January 1969. Dr. David E. Graham, a general practitioner, testified that he saw plaintiff on several occasions between 28 January and 7 February 1969, during which time he treated her for acute bronchitis as well as for her injuries. For the latter, in addition to medicine, he prescribed a cervical collar to help the muscles relax and to speed up recovery. On cross-examination Dr. Graham testified he felt that plaintiff was exaggerating her complaints but was not sure of it. After 7 February 1969, Dr. Graham did not again see plaintiff until 4 December 1972, Monday of the week in which the trial occurred. Dr. Heinig and Dr. Graham were the only two doctors to testify at the trial. By stipulation of counsel a written report signed by Dr. J. M. Petty, a neurologist, was put in the record and read to the jury. In this report, which was dated 26 March 1969, Dr. Petty stated that he examined plaintiff in his office on 12 February 1969, that he thought "it is likely this girl has sustained a soft tissue injury of the flexation extension variety to the muscles of her neck," that he had placed her on darvontran as needed for pain and seconal to take for sleep, and that it was his feeling that she would probably continue to improve and he "would doubt very seriously that she would have any permanent deficit because of this."

Evidence of plaintiff's medical expenses incurred during the period immediately following the accident, including the charges made by Drs. Heinig, Graham and Petty, was admitted before the jury, and defendant did not challenge these expenses either as being unreasonable in amount or as not having been reasonably incurred for treatment of the injuries plaintiff received in the accident. The rulings to which plaintiff excepts and now assigns error relate to her efforts to introduce evidence of certain doctor bills and other expenses incurred by her after she moved to Florida in October 1969. After sustaining defendant's objections to this evidence, plaintiff testified for the record and in the absence of the jury, as follows:

"While I was in Florida, I did incur medical expenses for injuries sustained in the accident. The first doctor that I saw was Dr. Hilliard, and he charged $50.00 and $62.00, that $112.00; the next doctor was Dr. Jackson and Dr. Annis, which together was $299.00, they are in the Watson Clinic. The next was Lakeland General Hospital for x-rays $65.00. The next was the physical therapist who charged $12.00 and $10.00, that's $22.00. Dr. Smith charged $12.00 for x-rays. Lee Memorial Hospital bill was $32.00. I bought prescription drugs while I was in Florida and paid approximately $80.00 for those. I did not have any other medical expenses that I recall while I was in Florida."

Still in the absence of the jury, plaintiff testified she had paid some of these bills but did not know which ones. When her counsel asked:

Question: "Are these bills all related to the complaints which you say you have from the accident or to some other treatment for some other ailment?"

Plaintiff answered: "They are definitely related to the accident."

[1] We find no error in the trial court's rulings excluding the evidence offered by plaintiff concerning her Florida medical expenses. Defendant, having stipulated negligence, was liable to plaintiff for all damages to her naturally and proximately resulting from his negligent act. Included, of course, was the reasonable cost of such medical treatment received by her as was made reasonably necessary by his fault. The burden remained on plaintiff, however, to show both that the medical attention she received was reasonably necessary for proper treatment of her injuries and that the charges made were reasonable in amount. As to her Florida expenses she has shown neither. There is no competent medical evidence to relate the necessity for such treatment as she may have received in Florida to the injuries she received in the 11 January 1969 accident; the mere assertion by plaintiff, who was a layman, that they were "definitely related to the accident" was not competent for that purpose. This Court has held it error to admit such evidence under similar circumstances. *Graves v. Harrington,* 6 N.C. App. 717, 171 S.E. 2d 218. Further, it has been widely held that in a personal injury action evidence of the amount charged for accrued medical, hospital, or nursing expenses is not in

itself evidence of the reasonableness of such expenses. Annotation, 12 A.L.R. 3d 1347, § 3. Here, there was no other evidence to show the reasonableness of the Florida charges. Plaintiff's first assignment of error directed to rulings excluding her evidence as to those charges is overruled.

[2]   On direct examination of Dr. Graham, plaintiff's counsel asked if he had an opinion as to whether the acute bronchitis for which he treated plaintiff in February 1969 "could or might have been connected with the injuries she received in the accident." The court sustained defendant's objections to this and to other questions by which plaintiff's counsel sought to develop some connection between his client's bronchitis and the accident. Plaintiff now assigns error to these rulings. However, what the witness's answers would have been does not appear in the record and the exclusion of testimony cannot be held prejudicial when the record fails to show what the answer of the witness would have been. *Gibbs v. Light Co.,* 268 N.C. 186, 150 S.E. 2d 207.

[3]   Plaintiff's counsel asked Dr. Graham for his prognosis based upon an examination he made of plaintiff on 4 December 1972, the day before the trial. The court sustained defendant's objection to this question. Had the witness been permitted to answer, he would have testified "[t]hat her existing condition as of today will be permanent." Under the circumstances of this case plaintiff suffered no prejudicial error by the exclusion of this testimony. All of the evidence shows that Dr. Graham had last treated plaintiff for her injuries on 7 February 1969, nearly four years before her trial. There was no evidence that she had received any medical treatment whatever or had consulted any doctor with reference to her injuries from the time she returned to live in Charlotte at the end of February 1972 up until the time of her trial. Her visit to Dr. Graham on 4 December 1972 was obviously made, not to obtain treatment, but to obtain evidence for use at the trial. With reference to that visit, Dr. Graham testified:

> "The last time I saw her was on December 4, 1972. At that time, she said she had intermittent episodes of headaches and some intermittent episodes of pain in the shoulder and neck. I made an examination of her at that time. My examination was negative. I could not find any objective evidence. My definition is that 'objective' is some-

thing that you can more or less demonstrate or see and 'subjective' is an opinion, more or less, it cannot be substantiated. I very much rely on subjective as well as objective findings in my examination to make a diagnosis. When I saw her in December, the opinion I am now ready to give is based against a background of clinical experience and also what she told me back some time before. I don't know whether she has been cured, whether she has reached a complete recovery from those things I treated her for a couple or three years ago or not, except for what she tells me."

In view of this testimony we find no prejudicial error in the court's excluding the evidence as to Dr. Graham's prognosis, based, as it was, entirely upon what plaintiff had told him during her visit with him on the day before the trial. Similarly, we find no prejudicial error in the court's sustaining defendant's objection to a hypothetical question which plaintiff's counsel asked of Dr. Graham. The question, which called for the witness's opinion as to whether plaintiff would have "any permanent partial disability" as a result of her injuries, was based, among other matters, upon an assumed finding by the jury that on 4 December 1972 plaintiff had *informed* the doctor that she still had pain in the neck, not that she actually still had such pain. Under the questions as phrased the doctor was ready to express as his opinion that plaintiff did have "some permanent partial disability." In forming such opinion the doctor obviously assumed the truthfulness of plaintiff in informing him that she still suffered pain, an assumption which the jury might have been unwilling to make. It is a rare personal injury case indeed in which the injured party does not claim at the time of trial still to have some residual pain from the accident. The jury might well have disbelieved plaintiff's claim in this regard but still been impressed by the doctor's opinion as to the permanency of her condition, not realizing that it was based upon an assumption which was contrary to their own finding. Under these circumstances we hold that defendant's objection to the hypothetical question was properly sustained.

Since plaintiff offered no competent evidence from which the jury might find that she suffered any permanent injuries, the court properly instructed them not to consider any damages for permanent injuries. We also find no error in other portions of the charge to which exception was taken.

We have considered plaintiff's remaining assignments of error and find no error sufficiently prejudicial to warrant a new trial. On this appeal we find

No error.

Judges CAMPBELL and HEDRICK concur.