EARLINE COCKERHAM TAYLOR v. SHIRLEY WOOTEN BOGER

No. 33

(Filed 6 April 1976)

1. **Evidence § 49— expert testimony — necessity for hypothetical question**

   When an expert witness testifies as to the facts based upon his personal knowledge, he may testify directly as to his opinion, but when the facts are not within the knowledge of the witness himself, the opinion of the expert must be based upon facts supported by evidence stated in a proper hypothetical question.

2. **Evidence § 49— hypothetical questions**

   In asking an expert witness a hypothetical question, only such facts as are in evidence or such as the jury will be justified in inferring from the evidence should be included, and the witness should be asked whether in his opinion a particular event or condition could or might have produced the result in question; however, if the expert has a positive opinion on the subject, he should be allowed to express it without using the "could" or "might" formula.

3. **Evidence § 50— hypothetical question — medical testimony — erroneous exclusion**

   The trial court erred in refusing to allow an orthopedic surgeon who treated plaintiff to answer a hypothetical question about the causal connection between phlebitis resulting from the accident and the development of varicose veins in plaintiff's right leg on the ground that the testimony would be "speculative" where another doctor had testified that when he first examined plaintiff she was suffering with phlebitis which he thought was the result of the accident and a back sprain sustained therein, the orthopedic surgeon had examined plaintiff and knew from his own knowledge that she had varicose veins, plaintiff testified she had varicose veins, and the orthopedic surgeon would have testified that in his opinion the phlebitis could have aggravated or caused the varicose veins which plaintiff now exhibits.

4. **Evidence § 44; Damages § 13— treatment and medical expenses in another state — competency**

   In this action to recover damages for injuries received in an automobile accident, the trial court erred in refusing to allow plaintiff's testimony concerning medical treatment she received in Ohio

Taylor v. Boger

and the medical bills she incurred there where the record shows that plaintiff received treatment by an orthopedic surgeon in this State for a back injury received in the accident, when plaintiff moved to Ohio she was instructed by the North Carolina doctor to consult an orthopedic surgeon in Ohio if she continued to have pain, plaintiff testified she did see the suggested orthopedic surgeon in Ohio and would have testified, if allowed, that he treated her for the same injury for which she was treated in this State, and the North Carolina doctor testified that on plaintiff's return to this State, he treated her for the same injuries for which he had treated her prior to the time she went to Ohio.

ON petition by plaintiff for discretionary review of the decision of the Court of Appeals, reported in 27 N.C. App. 337, 219 S.E. 2d 290 (1975), affirming the judgment of *Kirby, J.,* 10 March 1975 Special Session of YADKIN Superior Court.

Plaintiff, Mrs. Earline Cockerham Taylor, instituted this action on 22 November 1972 to recover damages in the sum of $25,000 for injuries sustained in an automobile accident. She alleged that defendant's automobile crossed the center line of the highway into plaintiff's lane of travel and collided with her automobile. Plaintiff further alleged injuries to her head, neck, lower back and leg. Defendant answered denying plaintiff's allegations.

At trial, plaintiff attempted to establish that the blow received in the accident caused phlebitis in her right leg which led to the development of varicose veins. Dr. Adams, an orthopedic surgeon who treated plaintiff and testified as a witness for her, was asked a hypothetical question about the causal connection between the injury sustained in the accident and the development of varicose veins in the leg. The trial court refused to allow the doctor to answer the question on the grounds that the doctor's testimony would be "speculative."

Later in the trial, plaintiff attempted to introduce evidence concerning medical expenses incurred from plaintiff's treatment by a doctor in Ohio, where plaintiff's husband was transferred following the accident. The court disallowed this testimony. Plaintiff excepted to the exclusion of this evidence and to the court's refusal to allow Dr. Adams to answer the hypothetical question.

Only one issue was submitted to the jury: "What amount of damages, if any, is the plaintiff entitled to recover of the defendant?

ANSWER: $1200.00"

From judgment entered on the verdict, plaintiff appealed to the Court of Appeals. That court found no error.

We allowed petition for discretionary review on 6 January 1976.

*Franklin Smith for plaintiff appellant.*

*Deal, Hutchins and Minor by Richard Tyndall for defendant appellee.*

MOORE, Justice.

Plaintiff first assigns as error the refusal of the trial court to allow Dr. Adams to answer the following hypothetical question:

> "Doctor, assuming the Jury should find from the facts and from the evidence in the case, and by its greater weight, that Earline Cockerham Taylor was riding in a 1969 Chevrolet automobile when it was involved in a collision with a Volkswagen automobile on October 8, 1971, on U.S. 421 here in the Town of Yadkinville, North Carolina, and that she received a blow to her right leg during the collision, and this blow was below the knee of her right leg; and that she that day went to Hugh Chatham Memorial Hospital and was examined by Dr. Claude McNeill, who found that at that time that she had a disease called phlebitis and that he thereafter treated her for phlebitis; and that sometime thereafter, after the phlebitis had subsided, that Mrs. Taylor developed what is commonly called varicose veins in the area below her knee where the phlebitis had been treated by Dr. Claude McNeill; and that you examined her on March 5, 1975 and found that she did have varicose veins in her right leg below the knee, do you have an opinion, satisfactory to yourself, as to whether or not the blow or trauma received in the accident which caused the phlebitis, as to whether or not the phlebitis could or might have caused the varicose veins, a condition that you found in her leg when you examined her on March 5, 1975?"

In refusing to allow the witness to answer this question in the presence of the jury, the trial judge, on *voir dire,* said:

> " . . . In the opinion of the Court, the doctor never having treated the patient for this condition and having no

independent recollection and no notes indicating that he ever so much as examined her leg, let alone treated her for phlebitis, that it is too speculative for the purpose of an expert opinion at this time. . . . "

For the purpose of the record, the doctor was allowed to answer as follows:

"That the phlebitis in her leg could have aggravated or indeed caused the development of the varicose veins that she now exhibits."

Prior to the testimony of Dr. Adams, Dr. Claude McNeill, a general practitioner who had examined plaintiff a few days after the accident, testified that he diagnosed plaintiff's injuries as phlebitis in her right leg and a lumbar sprain in her lower back. Dr. McNeill further testified that he certainly thought the phlebitis was the result of the accident and the sprain. He also testified on *voir dire* that although plaintiff did not suffer from phlebitis at the time of trial, she did have varicose veins.

Plaintiff then called Dr. Richard Adams who was stipulated to be "a licensed practicing physician in the State of North Carolina, and a medical expert, specializing in the field of orthopedic surgery." Dr. Adams testified at length about the injury to plaintiff's back as the result of the accident. He was then asked whether he had ever examined her leg and he answered that he had. He was asked about his familiarity with phlebitis and varicose veins and asked to describe the relationship between the two. Defendant objected and the objection was sustained. Dr. Adams was then asked to step down off the stand and examine plaintiff's right leg. Defendant's objection was again sustained. Plaintiff then asked the doctor whether part of his training in orthopedic surgery included the study of phlebitis, to which he answered yes. Defendant again objected and the jury was excused.

On *voir dire,* Dr. Adams testified that during his year of general surgical training he spent half of that year studying vascular diseases and surgery of the vessels. He also testified that in his practice he deals with the total patient and some of those patients have varicose veins or phlebitis. The trial judge then asked Dr. Adams:

"JUDGE: In the interest of time, have you examined this lady [plaintiff], and do you have an opinion, satisfac-

tory to yourself, and to a reasonable degree of medical certainty, whether or not the condition she now has, varicose veins, that Dr. McNeill diagnoses, might have or could have been caused as a result of injury to her leg?

A. Yes.

JUDGE: What is your opinion about that?

A. That it could have. . . . "

The trial judge refused to allow Dr. Adams to answer this question before the jury.

[1] When an expert witness testifies as to the facts based upon his personal knowledge, he may testify directly as to his opinion, *Cogdill v. Highway Comm.* and *Westfeldt v. Highway Comm.,* 279 N.C. 313, 182 S.E. 2d 373 (1971); *Rubber Co. v. Tire Co.,* 270 N.C. 50, 153 S.E. 2d 737 (1967); *Service Co. v. Sales Co.,* 259 N.C. 400, 131 S.E. 2d 9 (1963), and when the facts are not within the knowledge of the witness himself, the opinion of an expert must be based upon facts supported by evidence stated in a proper hypothetical question, *Cogdill v. Highway Comm.* and *Westfeldt v. Highway Comm., supra; Todd v. Watts,* 269 N.C. 417, 152 S.E. 2d 448 (1967); 1 Stansbury, N. C. Evidence § 136 (Brandis Rev. 1973). If the expert witness has personal knowledge of some of the facts but not all, a combination of these two methods may be employed. *Cogdill v. Highway Comm.* and *Westfeldt v. Highway Comm., supra; State v. David,* 222 N.C. 242, 22 S.E. 2d 633 (1942); 1 Stansbury, N. C. Evidence §§ 136 and 137 (Brandis Rev. 1973).

> " . . . It is well settled in the law of evidence that a physician or surgeon may express his opinion as to the cause of the physical condition of a person if his opinion is based either upon facts within his personal knowledge, or upon an assumed state of facts supported by evidence and recited in a hypothetical question. [Citations omitted.] . . . " *Spivey v. Newman,* 232 N.C. 281, 284, 59 S.E. 2d 844, 847 (1950). *Accord Seawell v. Brame,* 258 N.C. 666, 129 S.E. 2d 283 (1963).

[2] In asking a hypothetical question, it is customary to incorporate in the question the relevant facts in evidence which counsel hopes will be accepted as true by the jury and to ask the witness his opinion based on such facts, if the jury shall believe them to be facts. *Cogdill v. Highway Comm.* and *Westfeldt*

Taylor v. Boger

*v. Highway Comm., supra; Perkins v. Langdon,* 237 N.C. 159, 74 S.E. 2d 634 (1953). In framing such a question, only such facts as are in evidence or such as the jury will be justified in inferring from the evidence should be included. The witness should be asked whether in his opinion a particular event or condition could or might have produced the result in question. *Teague v. Power Co.,* 258 N.C. 759, 129 S.E. 2d 507 (1963); *Beard v. R. R.,* 143 N.C. 136, 55 S.E. 505 (1906). However, if the expert has a *positive* opinion on the subject, he should be allowed to express it without using the "could" or "might" formula. *Mann v. Transportation Co.* and *Tillett v. Transportation Co.,* 283 N.C. 734, 748, 198 S.E. 2d 558, 568 (1973). *See* 1 Stansbury, N. C. Evidence § 137 (Brandis Rev. 1973).

**[3]** Applying these principles to the hypothetical question asked in this case, we hold that the trial court erred in ruling that the hypothetical question was too speculative for the purpose of an expert opinion. Dr. McNeill had testified that when he first examined plaintiff she was suffering with phlebitis which he thought was the result of the accident and the sprain sustained therein. Dr. Adams had examined plaintiff and knew from his own knowledge that she had varicose veins. Had he been allowed to answer the question, he would have testified that in his opinion the phlebitis in plaintiff's leg could have aggravated or indeed caused the development of the varicose veins that she now exhibits. Plaintiff herself later testified that she had varicose veins. Under these circumstances, the question was not too speculative for the purpose of an expert opinion.

The Court of Appeals, in passing upon the admissibility of this hypothetical question, stated:

"We do not necessarily agree that the doctor's opinion should be excluded because it is 'speculative.' See *Lockwood v. McCaskill,* 262 N.C. 663, 138 S.E. 2d 541 (1964). However, we find no error in the ruling not to allow the answer.

"The record discloses no evidence having been admitted prior to the hypothetical question concerning plaintiff's varicose veins. Thus the question contains facts which are not in evidence and which cannot be inferred from the evidence."

The trial court erroneously excluded the testimony of Dr. Adams concerning plaintiff's varicose veins. Furthermore, the hypothetical question set out above contained facts within the

personal knowledge of Dr. Adams or facts which had been testified to by other witnesses. We hold, therefore, that Dr. Adams should have been allowed to answer this question. *Cogdill v. Highway Comm.* and *Westfeldt v. Highway Comm., supra; State v. David, supra.*

[4]    Plaintiff next assigns as error the trial court's refusal to allow her testimony concerning the treatment she received in Ohio and the medical bills she incurred there. Plaintiff testified that she had been referred to a doctor in Ohio by Dr. Adams. On objection by defendant, the trial court ruled that no evidence concerning the Ohio treatment would be admitted or admissible until Dr. Adams testified that he in fact did refer her to a doctor in Ohio. Dr. Adams did later so testify and was then asked whether plaintiff told him she did receive treatment. Defendant objected and the judge then ruled:

> "JUDGE: As I indicated in pretrial conference, I will allow the plaintiff to say only that she did, in fact, see a physician in Ohio. . . . Mr. Smith, the only question I will let you ask her pursuant to Dr. Adams' advice is, did you see a physician in Ohio—yes, period.

> MR. SMITH: Is she going to be able to name him?

> JUDGE: No, just that mere statement excluding medical bills."

While the jury was out deliberating the case, Mrs. Taylor was allowed to take the stand and give further testimony as follows:

> "When I moved to the State of Ohio in 1972, I was advised by Dr. Adams to see an orthopedic specialist in Ohio. I moved to Hamilton, Ohio. I did see an orthopedic doctor after I arrived there. His name was Carl Palechek. He was a medical doctor, specializing in orthopedic surgery. I don't remember the number of times I saw Dr. Palechek. I would say approximately eight times, but really I don't know. He treated me for my back. This was the same injury I had received in this automobile accident on October 8, 1971. He treated me for the lower back. This is the same area of the back that Dr. Adams testified that he treated me for. I was hospitalized during the course of his treatment. Dr. Adams advised me to see Dr. Carl Palechek. Dr. Palechek had me hospitalized in the Fort Hamilton Huss

Taylor v. Boger

Hospital. He put me in traction for ten days and I was given physical therapy. The hospital bill was $660.00, and some odd cents. I don't remember. Dr. Palechek's bill was $156.00 and some odd cents, but I don't remember the odd cents. The only thing Dr. Palechek told me when I came back to North Carolina was if I had other complications other than that what he just treated me for, he'd have to put me back in traction again."

The trial judge then stated:

"Let the record show that in the pretrial conference the plaintiff indicated a desire to offer evidence pertaining to medical treatment of the plaintiff while residing in Ohio; that the Court in its discretion indicated to the plaintiff's counsel and defendant's counsel that the Court would not admit such evidence without proper medical foundation. For that reason, or without proper medical foundation for that testimony, and the Court ruled that such testimony of medical treatment while in Ohio would be excluded for that reason; and further indicated to both counsel that the Court would allow the plaintiff to testify that she saw an orthopedic specialist in Ohio upon the recommendation of Dr. Richard Adams, the attending physician in North Carolina, if Dr. Adams' testimony indicated that he had, in fact, referred her to a specialist in the State of Ohio; and the Court further indicated to plaintiff's counsel that evidence relating to medical care while in the State of Ohio would be placed in the record out of the hearing of the Jury at the completion of the trial for such purposes as plaintiff's counsel might deem it important."

The Court of Appeals sustained this ruling, stating:

" . . . We find no error in the court's rulings. There is no evidence to show the necessity for plaintiff's treatment in Ohio (where she lived for awhile after the accident in North Carolina). Furthermore, there is no evidence that the medical expenses paid in Ohio were reasonable in amount."

The Court of Appeals relied on *Ward v. Wentz*, 20 N.C. App. 229, 201 S.E. 2d 194 (1973). Factually, that case is distinguishable from the case at bar. In that case, there was no

evidence that plaintiff had been referred by any doctor in North Carolina to any doctor in Florida. Her testimony was as follows:

> " 'While I was in Florida, I did incur medical expenses for injuries sustained in the accident. The first doctor that I saw was Dr. Hilliard, and he charged $50.00 and $62.00, that $112.00; the next doctor was Dr. Jackson and Dr. Annis, which together was $299.00, they are in the Watson Clinic. The next was Lakeland General Hospital for x-rays $65.00. The next was the physical therapist who charged $12.00 and $10.00, that's $22.00. Dr. Smith charged $12.00 for x-rays. Lee Memorial Hospital bill was $32.00. I bought prescription drugs while I was in Florida and paid approximately $80.00 for those. . . . ' "

There was no showing of the need for such services or that these services were required by the injury which she had sustained in the accident involved in that case.

In the present case, Dr. Adams instructed plaintiff to consult an orthopedic surgeon in Ohio if she continued to have pain. Plaintiff then testified that she did see the orthopedic surgeon in Ohio suggested by Dr. Adams, and would have testified, if allowed to do so, that he treated her for the same injury for which Dr. Adams had treated her. She would have further outlined the treatment given her and the amount of the bills incurred for such treatment. Dr. Adams testified that on plaintiff's return to North Carolina, he treated her for the same injuries for which he had treated her prior to the time she went to Ohio. These facts clearly distinguish this case from *Ward v. Wentz, supra.*

The trial court refused to allow the evidence of the medical bills to be introduced on the grounds that no proper medical foundation had been established. Plaintiff is, of course, entitled to damages only if they are the natural and proximate result of defendant's negligence. *Brown v. Neal,* 283 N.C. 604, 197 S.E. 2d 505 (1973); *King v. Britt,* 267 N.C. 594, 148 S.E. 2d 594 (1966); 3 Strong, N. C. Index 2d, Damages § 2, p. 165. Dr. Adams, plaintiff's physician in North Carolina, testified concerning his treatment of plaintiff's back injuries immediately following the accident and upon her return to North Carolina in 1975. In Dr. Adams's opinion, the injuries which he diagnosed and treated after the accident were the same injuries he treated on plaintiff's return to North Carolina. The plain-

Taylor v. Boger

tiff herself testified on *voir dire* that the doctor to whom Dr. Adams referred her in Ohio, Dr. Palechek, treated her for the same injury. "He treated me for my back. This was the same injury I had received in this automobile accident on October 8, 1971. He treated me for the lower back. This is the same area of the back that Dr. Adams testified that he treated me for." Defendant contends, however, that plaintiff was incompetent to testify concerning her treatment in Ohio for the reason that this is an area that requires expert testimony, citing *Gillikin v. Burbage,* 263 N.C. 317, 139 S.E. 2d 753 (1965). In *Gillikin,* however, the plaintiff attempted to establish by lay testimony that her ruptured disc resulted from a blow from a car door. No expert medical opinion was introduced to that effect and this Court held that this type of injury required expert medical testimony to establish causation. In present case, we are also dealing with a back injury, but here, two doctors, Dr. McNeill and Dr. Adams, testified that in their opinion plaintiff suffered injury to her back, a lumbarsacral sprain, and to her right leg, phlebitis, as a result of the automobile accident with defendant. Plaintiff simply testified that the same area of her back that had been treated by Dr. Adams was treated by Dr. Palechek, facts about which she was competent to testify.

As was said in *Kizer v. Bowman,* 256 N.C. 565, 576, 124 S.E. 2d 543, 551 (1962) :

"We think the rule applicable to damages in this case, and to the admission of evidence as to the cost of nurses, medical expenses, hospital bills, loss of time, *et cetera,* is well stated in *Sparks v. Holland,* 209 N.C. 705, 184 S.E. 552: ' . . . "in this class of cases [personal injuries] the plaintiff is entitled to recover as damages one compensation for injuries, past and prospective, in consequence of the defendant's wrongful or negligent acts. These are understood to embrace indemnity for actual nursing and medical expenses and loss of time, or loss from inability to perform ordinary labor, or capacity to earn money." ' [Citations omitted.]"

*See King v. Britt, supra; Mintz v. R. R.,* 233 N.C. 607, 65 S.E. 2d 120 (1951). In *Williams v. Stores Co., Inc.,* 209 N.C. 591, 184 S.E. 496 (1936), this Court approved the following charge

of the trial court on the issue of damages with respect to medical expenses:

> " 'Damages for personal injuries, such as those complained of in this action, include actual expenses for nursing, medical services, loss of time and earning capacity, mental and physical pain and suffering.

> " 'By actual expenses for nursing and medical expenses is meant such sum as the plaintiff has expended therefor in the past, or for which she has become indebted, and such further expenses for nursing and medical services as she will, in your best judgment, based upon the evidence in this case and by the greater weight thereof, be put to in the future, which flow directly and naturally from any injury she may be found by you to have sustained on account of the negligence of the defendants, complained of in this action.' " *Id.* at 601, 184 S.E. at 502.

Since evidence was allowed as to the fact of treatment, the trial court erroneously excluded the details of the treatment re-received and the cost of that treatment.

Dr. Adams was qualified to testify to plaintiff's condition at the time of the trial and to answer the hypothetical question asked him. Plaintiff was entitled to testify as to the treatment she received in Ohio and the cost of that treatment. The exclusion of this testimony was error and entitles plaintiff to a new trial.

The decision of the Court of Appeals is reversed with direction that the cause be remanded to the Superior Court of Yadkin County for retrial in accordance with this opinion on the issue of damages only.

New trial.