MARY RUTH EVANS v. WARREN HARVEY STILES

No. 7630SC274

(Filed 4 August 1976)

1. **Automobiles § 83— pedestrian in parking lot — failure to see backing car — contributory negligence**

    Plaintiff was not contributorily negligent as a matter of law in failing to see defendant's car as it backed toward her in a parking lot in a direction against the ordinary and usual flow of traffic for the particular lane.

2. **Evidence § 44; Damages § 13— necessity for medical treatment — admissibility of medical bills**

    Plaintiff's evidence was sufficient to show that hospital and drug bills she incurred were reasonably necessary for the treatment of the injuries she sustained as a result of defendant's negligence, and such bills were properly admitted in evidence.

APPEAL by defendant from *Thornburg, Judge.* Judgment entered 6 November 1975 in Superior Court, CHEROKEE County. Heard in the Court of Appeals 18 June 1976.

This is a civil action wherein the plaintiff, Mary Ruth Evans, is seeking damages from the defendant, Warren Harvey Stiles, allegedly resulting from injuries incurred when plaintiff was struck by an automobile owned by defendant and driven by defendant's wife, Ruby Stiles.

At the close of plaintiff's evidence, the defendant made a motion for directed verdict on the grounds, among other things, that "the evidence of the plaintiff, taken in the light most favorable to the plaintiff, discloses contributory negligence on the part of the plaintiff as a matter of law." The motion was denied and the following issues were submitted to and answered by the jury as indicated:

"1. Was Ruby Lee Stiles the agent of the defendant and acting in the course and scope of her agency at the time complained of in plaintiff's complaint?

ANSWER: Yes.

2. Was the plaintiff injured and damaged by the negligence of Ruby Lee Stiles as alleged in plaintiff's complaint?

ANSWER: Yes.

3. If so, did the plaintiff, by her own negligence, con-
tribute to her own injuries and damages as alleged in de-
fendant's answer?

ANSWER: No.

4. What amount, if any, is plaintiff entitled to recover
of the defendant?

ANSWER: $5,000.00."

From a judgment entered on the verdict, defendant appealed.

*Jones, Jones and Key by James U. Downs for plaintiff ap-
pellee.*

*Morris, Golding, Blue and Phillips by William C. Morris,
Jr., for defendant appellant.*

HEDRICK, Judge.

Defendant assigns as error the denial of his motion for a
directed verdict. At trial the plaintiff offered evidence tending
to show the following:

The plaintiff, who worked at the Peachtree Products plant
in Cherokee County, N. C., arrived for work at approximately
6:45 a.m. on 18 June 1974 to begin work on the 7:00 a.m. shift.
She parked in the parking lot maintained for employees and
visitors which was in front of the plant.

The vehicular access lane in the parking lot has directional
arrows painted on the pavement which indicate the intended
flow of traffic—one-way—through the parking lot. There are
marked parking spaces which slant in the direction of on-com-
ing traffic to enable easier entrance from the access lane as
you travel around the lot.

After plaintiff parked, she had to walk through the parking
lot in order to get to the plant. There were no marked passage-
ways for pedestrians. Before crossing the lot, she waited at the
rear of her car for two cars to pass, the second of which was
the defendant's. She then looked to her left, the direction of on-
coming traffic. Seeing no traffic, she began to cross. As she
crossed, she spoke a greeting to a friend, then looked back to

her right and saw defendant's car, being driven by his wife, Ruby Stiles, backing toward her. She then testified:

> "[J]ust as I turned around, I spotted the car, and it was so close that I couldn't get from one side to the other side of the car, so I wheeled around, I jerked around, and my body backwards, to try to keep from being hit at the bottom, which I did throw my hands on the car to try to brace myself from being hurt or knocked down. * * *
>
> [B]y the time she stopped, it was against me."

Ruby Stiles testified, as plaintiff's witness, that she came into the parking lot and began to pull into a space. As she turned in she saw that the space was occupied by a small car, so she put the car in reverse and began to back out. She looked behind her but did not see plaintiff, although she had seen her as she passed by her while driving toward the parking space. Suddenly, Kathleen Elliot, who was riding with Mrs. Stiles, "hollered" and Mrs. Stiles stopped. She then put the car in forward gear and proceeded on until she found a parking space.

Mrs. Elliott testified that she saw plaintiff as they came into the lot. Although she did not see her when Mrs. Stiles backed-up, she hollered because she knew plaintiff was behind the car. She also testified that Mrs. Stiles had not begun to pull into the space and that when she first stopped it had not been necessary for her to back-up in order to proceed forward in the parking lot.

[1] Citing *Holloway v. Holloway,* 262 N.C. 258, 136 S.E. 2d 559 (1964) ; *Blake v. Mallard,* 262 N.C. 62, 136 S.E. 2d 214 (1964) ; *Rosser v. Smith,* 260 N.C. 647, 133 S.E. 2d 499 (1963) ; *Campbell v. Doby,* 19 N.C. App. 94, 198 S.E. 2d 25 (1973) ; and *Byrd v. Potts,* 12 N.C. App. 262, 182 S.E. 2d 837 (1971), defendant contends the evidence in the present case discloses that plaintiff failed to keep a proper lookout for motor vehicles using the access lane and that the failure on the part of the plaintiff was contributory negligence as a matter of law barring her claim. We do not agree. Each of the cited cases is distinguishable on its facts. In each of these cases, the plaintiff was attempting to cross a public highway where motor vehicles ordinarily travel in both directions. In the instant case, plaintiff was walking in one of the vehicular access lanes of a parking lot, where the traffic ordinarily moved in one direction, when

she was injured as a result of defendant's automobile *backing* in a direction against the ordinary and usual flow of traffic in that particular lane. Whether the evidence disclosed that plaintiff was negligent in failing to see defendant's car as it backed toward her and whether such negligence was one of the proximate causes of her injuries was for the jury to determine. We cannot say that plaintiff's failure to see the defendant's car and avoid the injuries sustained was contributory negligence as a matter of law. The court properly denied defendant's motion for a directed verdict.

[2]   Citing *Taylor v. Boger,* 27 N.C. App. 337, 219 S.E. 2d 290 (1975), *reversed* 289 N.C. 560, 223 S.E. 2d 350 (1976) and *Ward v. Wentz,* 20 N.C. App. 229, 201 S.E. 2d 194 (1973), defendant contends the court erred in allowing "the plaintiff to introduce into evidence the amount of the drug bill and the drug bill itself and the amount of the physician's bill and the bill itself without any evidence to the effect that medical attention she received was reasonably necessary for the treatment of injuries resulting from the incident of 18 June 1974, AND that the charges were reasonable in amount." In reversing the Court of Appeals decision in *Taylor v. Boger, supra,* the Supreme Court at 289 N.C. 560, 567, 223 S.E. 2d 350, 355 (1976), said:

"The Court of Appeals sustained this ruling, stating:

' . . . We find no error in the court's rulings. There is no evidence to show the necessity for plaintiff's treatment in Ohio (where she lived for awhile after the accident in North Carolina). Furthermore, there is no evidence that the medical expenses paid in Ohio were reasonable in amount.'

The Court of Appeals relied on *Ward v. Wentz,* 20 N.C. App. 229, 201 S.E. 2d 194 (1973). Factually, that case is distinguishable from the case at bar. In that case, there was no evidence that plaintiff had been referred by any doctor in North Carolina to any doctor in Florida. Her testimony was as follows:

' " While I was in Florida, I did incur medical expenses for injuries sustained in the accident. The first doctor that I saw was Dr. Hilliard, and he charged me $50.00 and $62.00 that $112.00; the next doctor was Dr. Jackson and Dr. Annis, which together was $299.00, they are in the

Evans v. Stiles

Watson Clinic. The next was Lakeland General Hospital for x-rays $65.00. The next was the physical therapist who charged $12.00 and $10.00, that's $22.00. Dr. Smith charged $12.00 for x-rays. Lee Memorial Hospital bill was $32.00. I bought prescription drugs while I was in Florida and paid approximately $80.00 for those . . . . " ' "

There was no showing of the need for such services or that these services were required by the injury which she had sustained in the accident involved in that case.

In the present case, Dr. Adams instructed plaintiff to consult an orthopedic surgeon in Ohio if she continued to have pain. Plaintiff then testified that she did see the orthopedic surgeon in Ohio suggested by Dr. Adams, and would have testified, if allowed to do so, that he treated her for the same injury for which Dr. Adams had treated her. She would have further outlined the treatment given her and the amount of the bills incurred for such treatment. Dr. Adams testified that on plaintiff's return to North Carolina, he treated her for the same injuries for which he had treated her prior to the time she went to Ohio. These facts clearly distinguish this case from *Ward v. Wentz, supra*."

We find the facts in the present case, likewise, distinguishable from the facts in the *Wentz* case.

Plaintiff testified that after the incident in the parking lot, she went to work but had to leave early because of the "pain." That afternoon she went to see Dr. Tanksley. His office was full, however; so he directed her to go to the hospital emergency room, which she did. She was admitted to the hospital and stayed four days under the care of Dr. Tanksley. After being discharged, she was still in pain; so she remained in bed except to go see Dr. Tanksley. She was hospitalized again in July for "serious pain in [her] back, about [her] rib cage, up, and [her] neck and head," and remained there for fourteen days. She remained out of work until 8 October 1974. During the period of time from 18 June until the time of trial, she has continued to see Dr. Tanksley and has taken medication for the pain.

Plaintiff then introduced her medical bills and a record of her drug charges showing hospital expenses of $457.25 and $1,535.55 and drug expenses of $678.65. Plaintiff also intro-

duced a deposition of Dr. Tanksley wherein he testified that her pain and injuries "could very well" have been caused "by the jerking and twisting of her body in response to defendant's car." He also testified that in his opinion the hospitalization, office visits, and treatment he administered were necessary for treating the plaintiff's condition.

We think the evidence here clearly discloses that the hospital and drug bills incurred by plaintiff and introduced into evidence were reasonably necessary for the treatment of the injuries she sustained as a result of the defendant's negligence. *Taylor v. Boger, supra.*

In the trial in the superior court, we find

No error.

Judges BRITT and MARTIN concur.