Cogdill v. Highway Comm. and Westfeldt v. Highway Comm.

## C. M. COGDILL v. NORTH CAROLINA STATE HIGHWAY COMMISSION

— AND —

## GEORGE G. WESTFELDT, JR. v. NORTH CAROLINA STATE HIGHWAY COMMISSION

### No. 100

### (Filed 30 July 1971)

1. **Eminent Domain § 13— inverse condemnation — trial without jury — consideration of damages**

    The trial judge in a nonjury inverse condemnation proceeding against the Highway Commission could consider evidence of damages for the limited purpose of finding that the plaintiffs had made a *prima facie* showing of substantial and measurable damages, although his finding as to damages would not be competent at the jury trial on the issue of damages. G.S. 136-108.

2. **Appeal and Error § 24— competency of evidence — necessity for objection**

    Where there is no objection to the admission of evidence, the competency of the evidence is not presented.

3. **Evidence § 25— inverse condemnation proceeding — inconsistency in the evidence — duty of the trial judge**

    In an inverse condemnation proceeding heard by the trial judge without a jury, any inconsistency in the testimony of plaintiffs' witnesses, the witness of the Highway Commission, and the maps introduced in evidence was a matter to be resolved by the trial court in its findings of fact.

4. **Appeal and Error § 48— nonjury trial — admission of incompetent evidence — presumption**

    In a nonjury trial, in the absence of words or conduct indicating otherwise, the presumption is that the judge disregarded incompetent evidence in making his decision.

5. **Appeal and Error § 57— findings of fact — review**

    The trial court's findings of fact will not be reversed unless based only on incompetent evidence.

6. **Appeal and Error § 57— findings of fact — review on appeal**

    If the findings of fact are supported by competent evidence, they are binding on the Supreme Court even though there is evidence to the contrary.

7. **Evidence § 40— opinion testimony — lay witnesses — capacity of drainage culverts to carry off flood waters**

    Lay witnesses who were familiar with bottomland traversed by several creeks and who had observed the flooding of the bottomland were competent to give an opinion as to whether the drainage culverts installed on a highway project adjacent to the bottomland would be sufficient to carry off the flood waters of the creeks.

**8. Evidence § 48— competency of expert witness**

An expert witness is one better qualified than the jury to draw appropriate inferences from the facts.

**9. Evidence § 54— expert witness — capacity of highway drainage culverts to carry off flood waters**

An expert witness in the field of hydraulic engineering and design is competent to give an opinion as to the capacity of a highway drainage culvert to carry off the flood waters of creeks traversing the locality, and to give an opinion on the cause of the flooding of a rock quarry that was adjacent to the drainage culvert.

**10. Evidence § 49— examination of expert witness — hearsay evidence**

Generally, an expert witness cannot base his opinion on hearsay evidence.

APPEAL by defendant from *Thornburg, S.J.*, 17 August 1970 Special Session HENDERSON Superior Court, transferred to this Court for initial appellate review by virtue of the general transferral order of 31 July 1970, entered pursuant to G.S. 7A-31(b)(4).

These are two separate inverse condemnation actions— the Cogdill claim for relief concerns a lessee's interest and the Westfeldt claim for relief concerns a fee interest in the same property—consolidated for the purpose of hearing a joint motion of plaintiffs and defendant for a determination of all issues raised by the pleadings, other than the issue of damages, pursuant to G.S. 136-108. The Cogdill action was commenced 7 December 1965. The Westfeldt action was commenced 16 August 1967.

A 5.2 acre tract in which Westfeldt has a fee interest was leased to Cogdill for a limestone quarry operation and is a part of a 13 acre Westfeldt tract. Prior to 4 October 1964 defendant State Highway Commission constructed a segment of Interstate Highway 26 (I-26) in Henderson County across a portion of the property owned by Atled Corporation which adjoins the Westfeldt property. This section of I-26 traversed a floodplain made up of Cane Creek, Kimsey Creek, and the French Broad River. Kimsey Creek flowed from the northeast to the southwest into and out of an abandoned quarry pond, thence along the northwestern boundary of the Westfeldt property and passed through a fill for I-26 by means of a "triple 7' x 7' box culvert." Other drainage facilities for I-26 on the Atled Corporation property included the bridge opening for

Cogdill v. Highway Comm. and Westfeldt v. Highway Comm.

Cane Creek, 24" and 36" reinforced concrete pipes, and side ditches joining the main and secondary drainage facilities.

Maps were introduced with the stipulation that the elevations shown on the maps are correct. One of these maps, Plaintiffs' Exhibit 8, is attached. This map shows that the floodplains of Cane Creek and Kimsey Creek were approximately 2,050 feet above sea level. (All elevations given herein are with reference to sea level.) The fill for I-26 constructed through the floodplain area had an elevation of 2,070 feet. The concrete headwall (top) of the triple box culvert through the fill was 2,058.75 feet. The water elevation of Kimsey Creek at its entrance to the box culvert was 2,050.86 feet. Northeast of the highway fill was an old abandoned quarry filled with water, the water elevation being 2,064.04 feet. The Westfeldt 13 acre tract was between the abandoned quarry and I-26; 7.8 acres of this tract joined the abandoned quarry and lay between the abandoned quarry and the new quarry leased and operated by Cogdill on the 5.2 acre tract. The 7.8 acre tract apparently was not being used for any purpose at the time in question. A dike with an elevation of 2,067.6 feet kept the water in the old quarry from running into the new quarry. Kimsey Creek ran out of the abandoned quarry and formed the northwestern boundary of the Westfeldt property. A concrete spillway built by plaintiffs along the boundary line prevented the water of Kimsey Creek from flowing into the new quarry. This spillway had an elevation of approximately 2,062 feet. At a point near the upper end of the new quarry, Kimsey Creek had an elevation of 2,059.1 feet.

Plaintiffs in summary contend and offered evidence tending to show that on 4 and 5 October 1964 a heavy rain—not unusual for the area—fell, causing Cane Creek to flood and back water northwest toward Kimsey Creek; that the water became so voluminous that the drainage ditches were unable to carry it, and the waters of Cane Creek and Kimsey Creek intermingled near the triple box culvert; that the combination of the waters from the two streams was too much for the culvert and the water dammed up above the culvert to a height of approximately 2,067 feet—the I-26 fill acting as a dam. As a result, the water backed up Kimsey Creek and into the old quarry, a distance of approximately 2,350 feet. The pressure from the additional water broke the dike containing the water in the

Cogdill v. Highway Comm. and Westfeldt v. Highway Comm.

old quarry, and this water then poured into the new quarry leased and operated by Cogdill, damaging the quarry, and reducing the value of the lease and the market value of the fee interest.

The only witness offered by defendant was C. R. Edgerton, the State hydrographic engineer, who was qualified as an expert witness in the field of hydraulic engineering and design. He testified that the project was designed by a consulting engineering firm in New York, and that the plans for the drainage of this particular section were reviewed and approved by him, the engineering staff of the Highway Commission, and the engineers for the Bureau of Public Roads. He further testified that before the contract was let he went over the project foot by foot on the grounds, and that after the flooding complained of in these actions he personally went upon the grounds, directed the gathering of information, and made studies of the flooding to determine what effects, if any, the design of I-26 had on the adjacent properties. Much of Edgerton's testimony, on objection by the plaintiffs, was excluded by the court, but he was allowed to answer for the purpose of the record. His admitted testimony, and that which was included for the record, tends to show that the breakage of the dike holding the water in the old quarry and thereby flooding the new quarry was caused by the inability of the concrete spillway along the Westfeldt property to carry the water of Kimsey Creek from the old quarry to the highway fill. His testimony further tends to show that this spillway along the new quarry is at an elevation of 2,062 feet; that the dike at the old quarry is at an elevation of 2,067.6 feet, and any back water would necessarily flow into the new quarry before backing into the old quarry; and that the dike holding the water of the old quarry broke because of the volume of water in Kimsey Creek and not because of any impoundment caused by the fill for I-26.

Judge Thornburg found facts substantially as contended by the plaintiffs and concluded as a matter of law that the fill in question constituted a permanent nuisance, resulting in substantial reduction in value of Cogdill's lease and Westfeldt's ownership; that this constitutes a "taking" in the constitutional sense, and that the damages to plaintiffs were proximately caused by the erection and maintenance of the fill with insufficient drainage space and culverting. Judge Thornburg then

ordered each action calendared for trial upon the issue of damages. From this order, defendant appealed.

*Attorney General Robert Morgan, Deputy Attorney General R. Bruce White, Jr., and Assistant Attorney General Andrew McDaniel, for defendant appellant.*

*Bennett, Kelly & Long and Van Winkle, Buck, Wall, Starnes & Hyde for plaintiff appellees.*

MOORE, Justice.

The parties stipulated that the hearing before Judge Thornburg was for a determination of all issues except damages, under G.S. 136-108.

G.S. 136-108 provides:

"Determination of issues other than damages.—After the filing of the plat, the judge, upon motion and ten (10) days' notice by either the Highway Commission or the owner, shall, either in or out of term, hear and determine any and all issues raised by the pleadings other than the issue of damages, including, but not limited to, if controverted, questions of necessary and proper parties, title to the land, interest taken, and area taken."

[1] Defendant contends that the trial court erred in hearing evidence of damages to the quarry and in making findings that the value of Cogdill's lease and the fair market value of the fee simple reversionary interest had been substantially reduced by reason of the flooding and the probability of future flooding.

[1, 2] Much of the testimony concerning damages to plaintiffs' property was introduced without objection. Where there is no objection to the admission of evidence, the competency of the evidence is not presented. *State v. McKethan,* 269 N.C. 81, 152 S.E. 2d 341; *Abbitt v. Bartlett,* 252 N.C. 40, 112 S.E. 2d 751; Stansbury, N. C. Evidence § 27 (2d ed., 1963) [hereinafter cited as Stansbury]. This Court ordinarily will not consider questions not properly presented by objections duly made. *State v. Brooks,* 275 N.C. 175, 166 S.E. 2d 70; Stansbury, *supra;* 1 Strong, N. C. Index 2d, Appeal and Error §§ 1 and 24. Some evidence as to damages, however, was allowed over defendant's objection. The trial court found that the "taking" in this case

resulted from a permanent and continuing nuisance created by the fill for I-26, and allowed the evidence as to damages and made findings of fact based upon such evidence only "for the purpose of this hearing." The trial court's findings as to damages would not be competent at the trial on the issue of damages. The evidence as to damages was competent and necessary for the limited purpose of making a *prima facie* showing that the plaintiffs had suffered substantial and measurable damages. In *Midgett v. Highway Commission*, 265 N.C. 373, 144 S.E. 2d 121, a case in which the plaintiff claimed damages to his property by flooding caused by a highway fill, the Court said:

> " . . . In an action for damages based on an alleged nuisance, the injury suffered by plaintiff must be *substantial*. [Citations omitted.] . . . One who seeks damages for the taking of property by the sovereign by reason of the alleged creation and maintenance by it of a permanent and continuing nuisance must make a *prima facie* showing of substantial and measurable damages."

This assignment of error is overruled.

[3-6]   Defendant next contends that the findings of fact made by the trial court were in conflict with the stipulated and competent evidence and were based on incompetent testimony of the plaintiffs and plaintiffs' witnesses, in that the testimony of plaintiff Cogdill as to various elevations was in conflict with those shown on the map which were stipulated to be correct, defendant contending that it would appear conclusive that the flood water would have to reach an elevation of 2,067.6 feet to break over the dike at the old quarry, and that before it would do so, it would flood plaintiffs' quarry since the spillway along this quarry is 5 feet below the dike. However, the plaintiffs' witnesses, Cogdill and Lance, testified that the water did back up into the old quarry pond, broke through the dike, and then entered plaintiffs' quarry. Any inconsistency in the testimony between plaintiffs' witnesses, defendant's witness, and the maps was a matter to be resolved by the trial court in its findings of fact. *Reynolds Co. v. Highway Commission*, 271 N.C. 40, 155 S.E. 2d 473. "In a nonjury trial, in the absence of words or conduct indicating otherwise, the presumption is that the judge disregarded incompetent evidence in making his decision." *City of Statesville v. Bowles*, 278 N.C. 497, 180 S.E.

2d 111. And the court's findings of fact will not be reversed unless based only on incompetent evidence. *Bizzell v. Bizzell,* 247 N.C. 590, 101 S.E. 2d 668; Stansbury § 4A; 7 Strong, N.C. Index 2d, Trial § 58. If the findings are supported by competent evidence, they are binding on this Court even though there is evidence to the contrary. *Huski-Bilt, Inc. v. Trust Co.,* 271 N.C. 662, 157 S.E. 2d 352; *Chappell v. Winslow,* 258 N.C. 617, 129 S.E. 2d 101.

[7] Defendant further contends that the court erred in admitting the testimony of Claude Lance, a witness for the plaintiff. Lance testified that he had worked on the Westfeldt property for fifteen years. He further testified:

"I am familiar with the Atled bottomlands that lie upstream from the fill before the highway was constructed. We had sufficient drainage ditches. I mean there were several ditches. I'd say there is at least four or more. These drain ditches carried off water during time of rainfall. When the fill was built by the Highway Commission they put culverts in. There were a few places that they did not. I mean the little small places, but in the main places they did. They didn't culvert all of them.

"Some of the drain ditches were eight or ten foot open ditches. I observed the culverting work taking place on the Atled property before the fill was put in.

"Q. Did you form an opinion satisfactory to yourself at that time as to whether or not the space at the Cane Creek Bridge and the three 7 x 7 box culverts and the 36 inch corrugated pipe would be sufficient to carry off the flood waters of the Kimsey Creek and those drain ditches and Cane Creek in time of high water?

"OBJECTION. OVERRULED. EXCEPTION NO. 5.

"A. I definitely did and I . . .

"MR. MCDANIEL: Wait just a minute.

"Q. You did?

"OBJECTION. OVERRULED. EXCEPTION NO. 6.

"Q. What was your opinion?

Cogdill v. Highway Comm. and Westfeldt v. Highway Comm.

"OBJECTION. OVERRULED. EXCEPTION NO. 7.

"A. I said it would not carry it. They were not adequate."

Similar testimony by plaintiff Cogdill was introduced over defendant's objection. Defendant contends that Lance and Cogdill were not experts and that under the conditions existing it would require an expert engineer to give an opinion as to the sufficiency of the drainage provided. Lance testified that he was familiar with the floods which had occurred on this property over the years; that it had flooded before this particular occasion; that before the highway was constructed they had several ditches and these ditches carried off the water during the time of rainfall; and that he observed the culvert work taking place before the fill was put in. Cogdill testified he had been familiar with this property 52 years and had operated a quarry there 21 years.

[8] We hold the opinion testimony of Cogdill and Lance is competent because of their knowledge of the terrain and of the drainage problems involved. An expert witness is one better qualified than the jury to draw appropriate inferences from the facts. Stansbury § 132 states:

"The question, then, in every case involving expert testimony, ought to be, Is *this witness* better qualified than *this* jury to form an opinion from *these facts?* If the answer is Yes, his opinion is admissible whether he is called a 'true expert' or is mildly disparaged by being classified as a 'witness specially qualified as to facts,' or an 'expert on the facts,' or 'not strictly an expert.' "

This is stated in *State v. Brodie,* 190 N.C. 554, 130 S.E. 205:

"It is familiar principle that one who is called to testify is usually restricted to facts within his knowledge; but if by reason of opportunities for observation he is in a position to judge of the facts more accurately than those who have not had such opportunities, his testimony will not be excluded on the ground that it is a mere expression of opinion."

Or, as said in *Chappell v. Winslow, supra,* a case involving the sufficiency of a drainage system (headnote 6) :

"Persons who live and work in a locality of flat land with constant problems of drainage of surface waters may testify that the drainage of an additional specified acreage into a ditch would cause the ditch to overflow periodically, and may testify as to the size of ditches and culverts which would be necessary to carry such additional drainage, the testimony being testimony of common observers as to the results of their observation."

Accord, Stansbury § 125. This assignment is overruled.

[9]  A more serious question is presented by the exclusion of the opinion evidence offered by the defendant from the witness, C. R. Edgerton. Edgerton was an admitted expert in the field of hydraulic engineering and design, who approved the plans for the drainage in this area and who went over the area on the grounds prior to construction and also after the flooding on the dates in question. A statement by Judge Sanborn in *Builders Steel Co. v. Commissioner of Internal Revenue*, 179 F. 2d 377 (8th Cir., 1950), is pertinent:

"In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. . . . [But he] can easily get his decision reversed by excluding evidence which is objected to, but which, on review, the appellate court believes should have been admitted."

The witness Edgerton was asked: "Based upon your analysis and the investigation and your qualifications as an expert witness and an expert engineer, hydrographic engineer, do you have an opinion satisfactory to yourself as to the effects of the interstate highway and culverts built for the same in the vicinity of the Westfeldt and Cogdill property with respect to the flood waters of October fourth, or fifth, 1964?" The witness answered, "Yes," but was not allowed to give his opinion. For the record, he stated: "From a study of the information obtained, it is my opinion that while some minor back water was created by the construction of the I-26 fill across the floodplains of Cane and Kimsey Creeks, it was not physically possible for it to have caused the break of the dike at the upper end of the quarry."

Mr. Edgerton also testified for the record after objection was sustained:

"From the analysis and investigation that I made and was made under my supervision, I have an opinion satisfactory to myself that water during October the fourth or fifth, 1964 did not back up from a point where the culvert carries Kimsey Creek under the interstate to a point where the dike is located.

"If you draw a line from the top of the triple barrel culvert as indicated on the plat on a straight plane back toward the Cogdill property and water was level with that line, a level line from the top or crown of the triple 7 x 7 box culvert would go upstream and intersect the bed of the creek approximately 1300 feet from the box culvert or in the area of the elevation 2,057.30 shown on the plaintiffs' map.

"Q. Now, Mr. Edgerton, do you have an opinion as to whether under such circumstances as you have just described as to how far it would go back, whether any water would have gone into that area indicated as boundaries of the Cogdill quarry?

"MR. HYDE: Objection.

"MR. BENNETT: Objection. There's no evidence that it did.

"THE COURT: Sustained.

"EXCEPTION NO. 16.

"A. No, it would not."

Another question was then asked Edgerton:

"Q. Now, Mr. Edgerton, based upon your personal investigation and investigation of your staff, made by your staff under your supervision, have you formed an opinion satisfactory to yourself as to the cause from a hydraulic standpoint of water entering the Cogdill limestone quarry property in October, 1964?

"MR. HYDE AND MR. BENNETT: Objection.

"THE COURT: Sustained. Answer for the record.

"EXCEPTION NO. 19.

"A. Yes, sir, I have.

"Q. What is that opinion?

"MR. HYDE AND MR. BENNETT: Objection.

"THE COURT: Sustained. Answer for the record.

"EXCEPTION NO. 20.

"A. In my opinion the channel along the northwest side of the quarry property was not of sufficient capacity to carry the flood flows occurring in Kimsey Creek and coming through the old quarry and that the dike between the old quarry and the limestone quarry became overtopped and failed due to overtopping.

"Q. Do you have an opinion from this same investigation mentioned previously as to whether the highway fill of interstate 26 had any effect on this?

"MR. BENNETT: Objection.

"MR. HYDE: Objection.

"THE COURT: Sustained. Answer for the record.

"EXCEPTION NO. 21.

"A. In my opinion the fill had no effect on the high water elevation in the abandoned quarry whatsoever."

Edgerton was then asked the following hypothetical question:

"Q. Mr. Edgerton, if the presiding judge should find, by the greater weight of the evidence in this case, that an excessive rainfall referred to as a flood occurred on or about October 4, 1964, on Kimsey Creek, in Henderson County; that located on Kimsey Creek in a northerly direction from U. S. Highway I-26 is a tract of land referred to as the Westfeldt Property, containing 5.2 acres, in which is located in the southern area of said tract a rock quarry which was in operation by the plaintiff on October 4, 1964, and prior thereto; that said quarry was bordered on the west by Kimsey Creek; that on the north the quarry is bordered by an area shown on the map referred to as 'Plaintiffs' Exhibit 8' as an 'abandoned quarry'; that the 'abandoned quarry' on October 4, 1964 contained a dike for

the purpose of holding water out of the rock quarry operated by the plaintiff; that the 'abandoned quarry' also contained a spillway which permitted the overflow of water from the 'abandoned quarry' to enter Kimsey Creek; that in the construction of I-26, there had been constructed a triple barrel culvert 7 foot by 7 foot, through which Kimsey Creek extended; that at the point of entrance of Kimsey Creek to said culvert the existing headwall elevation was 2,058.75; that the top of the old dike elevation existing on October 4, 1964, was 2,067.60; that on October 4th or October 5th, 1964, the water in Kimsey Creek had spread itself over an area south and west of the rock quarry lands of 5.2 acres because of the excessive rainfall; that on the morning of October 4th or 5th, 1964, the water had risen to a point approximately 12 inches below the top of the culvert and when seen at that time, the dike at the south end of the 'abandoned quarry' had already broken, having found a weak point in the dike, and the water flowing from Kimsey Creek into the 'abandoned quarry' was entering the rock quarry through the dike which had given way—if the Court should find these facts to be true, by the greater weight of the evidence, have you an opinion satisfactory to yourself as to whether or not back water created by the I-26 fill and the structures thereunder caused the breaching of the dike located at the south end of the abandoned quarry—have you an opinion based on those facts?

"A. Yes.

"Q. What is your opinion?

"MR. HYDE: Objection.

"MR. BENNETT: Objection.

"THE COURT: Sustained.

"EXCEPTION NO. 25."

The witness was allowed to answer for the record:

"A. In my opinion in order—in my opinion the back water from I-26 could not have caused the breach in the dike below the abandoned quarry. To do so would have required the water at the I-26 fill to reach an elevation at

least 8.85 feet above the top of the headwall. Since it did not reach near this elevation, it would be physically impossible for this to have been the cause.

"Q. I see. Now, if the Court should find the facts to be true, by the greater weight of the evidence, which has just been recited to you in the previous question, have you an idea—opinion, rather, have you an opinion satisfactory to yourself as to what did cause the dike to break?

"A. Yes, I have.

"Q. All right, now what is your opinion?

"MR. BENNETT: Objection.

"MR. HYDE: Objection.

"THE COURT: Sustained.

"EXCEPTION No. 26."

The witness was allowed to answer for the record:

"A. In my opinion, the flood waters reaching the abandoned quarry were in a greater quantity than Kimsey Creek below the quarry could adequately discharge, therefore, creating an impoundment in the abandoned quarry which overtopped the dike causing it to fail."

Some of Edgerton's testimony was properly excluded because it was based upon hearsay as to the height of the flood marks on the highway fill. An engineer for defendant measured these flood marks but for some reason was not called as a witness. However, the questions set out above were based upon facts known to Edgerton, or, as in the hypothetical questions, based upon facts known to Edgerton and testimony of the plaintiffs' witness Allison. From Allison's testimony the judge could have found that the dike at the old quarry broke allowing the water to pour into the new quarry before the box culverts at the fill were full—in fact, while these culverts lacked some 12 inches being full.

[10] Where an expert witness testifies as to facts based upon his personal knowledge, he may testify directly as to his opinion. *Rubber Co. v. Tire Co.*, 270 N.C. 50, 153 S.E. 2d 737; *Service Co. v. Sales Co.*, 259 N.C. 400, 131 S.E. 2d 9; Stansbury

---

**Cogdill v. Highway Comm. and Westfeldt v. Highway Comm.**

---

§ 136; 31 Am. Jur. 2d, Expert and Opinion Evidence § 37 (1967) ; 3 Strong, N. C. Index 2d, Evidence § 49. Generally, however, an expert witness cannot base his opinion on hearsay evidence. *Todd v. Watts,* 269 N.C. 417, 152 S.E. 2d 448; Stansbury §§ 136 and 143; 2 Jones on Evidence § 421 (5th ed., 1958) ; 32 C.J.S. Evidence § 546(63) (1964). And when the facts are not within the knowledge of the witness himself, the opinion of an expert must be upon facts supported by evidence, stated in a proper hypothetical question. *Todd v. Watts, supra.* If the expert witness has personal knowledge of some of the facts, but not all, a combination of these two methods may be employed. *State v. David,* 222 N.C. 242, 22 S.E. 2d 633; Stansbury §§ 136 and 137. The questions set out above contained facts within the personal knowledge of the witness Edgerton or facts which had been testified to by other witnesses. The trial court erred in sustaining objections to these questions.

[9] Plaintiffs' witnesses, Cogdill and Lance, not engineers, were permitted by the court to give their opinion as to the sufficiency of the drainage provided for the fill in question and as to the cause of the flooding and the resulting damage to the Cogdill quarry. Edgerton, an admitted expert in the field of hydraulic engineering and design and head of the hydrographic department of the Highway Commission, who was familiar with the design of this highway project, who had been over the grounds foot by foot prior to construction, who described the drainage pattern in detail, and who after the flood went upon the grounds personally and made studies as to the effect of the fill on the flooding of plaintiffs' quarry, was prevented from expressing his opinion as to the sufficiency of the drainage or as to the cause of the flooding. By so doing the court did not permit "the witnesses for both parties to testify upon equal terms." *Rubber Co. v. Tire Co., supra.* This was error.

For the reasons stated, the cases are remanded to the Superior Court of Henderson County for a new G.S. 136-108 hearing.

Error and remanded.