STATE OF NORTH CAROLINA ex rel JOHN RANDOLPH INGRAM, Commis-
SIONER OF INSURANCE v. NORTH CAROLINA FARM BUREAU INSURANCE
AGENCY, INC.

No. 8010SC602

(Filed 3 February 1981)

**Insurance § 1— procurement of errors and omissions insurance — insurer not
licensed in N. C. — liability for premium tax**

> Defendant insurance agency "procured" errors and omissions insurance
> written by an insurer not licensed to do business in N. C. for various insurance
> agents in this State and was therefore liable for the premium tax imposed by G.S.
> 58-53.3 where defendant received data about the errors and omissions insurance
> program from the insurer, including application and renewal forms, and for-
> warded the forms to prospective applicants; insureds sent applications for renew-
> als of the insurance to defendant; defendant billed the insureds and collected
> premiums from them; defendant was billed for the premiums by the insurer,
> wrote checks for the premiums collected less a 5% commission, and forwarded the
> checks to the insurer; defendant received many certificates of insurance from the
> insurer and forwarded the certificates to the agents covered; on occasion defend-
> ant returned certificates to the insurer, calling attention to errors or charges; and
> defendant furnished agents information regarding the cost of an errors and
> omissions policy, described the available plans, and instructed the agents to let
> defendant know if they desired such insurance.

Judge ARNOLD dissenting.

APPEAL by plaintiff from *Herring, Judge.* Judgment entered
14 February 1980 in Superior Court, WAKE County. Heard in the
Court of Appeals 13 January 1981.

This is an action to collect a 5% tax, plus penalties imposed by
G. S. 58-53.3, on premiums collected by defendant on errors and
omissions insurance written for various insurance agents between
1 July 1972 and 30 July 1978 and paid to an insurance company not
licensed to do business in North Carolina.

G. S. 58-53.3 provides in part:

[W]hen any person *procures* insurance on any risk lo-
cated in this State with an insurance company not
licensed to do business in this State, it shall be the duty of
such person to deduct from the premium charged for the
policy or policies issued for such insurance five per cen-
tum (5%) of the premium and remit the same to the
Commissioner of Insurance of the State, . . . (Emphasis

added.)

At the conclusion of plaintiff's evidence, defendant moved for a dismissal as provided under G. S. 1A-1, Rule 41(b). The trial judge made findings of fact, conclusions of law and determined that the defendant had not procured insurance within the meaning of the statute and denied liability. Plaintiff appealed.

*Attorney General Edmisten, by Assistant Attorney General Richard L. Griffin, for plaintiff appellant.*

*Broughton, Wilkins & Crampton, by Robert B. Broughton and William S. Aldridge, for defendant appellee.*

HILL, Judge.

The crux of this case is whether the trial court was correct in concluding that the defendant did not procure insurance within the meaning of G. S. 58-53.3 and in granting the defendant's motion for involuntary dismissal.

The trial judge made the following findings of fact and conclusions of law:

> 1. The plaintiff, John Randolph Ingram, is the duly elected Commissioner of Insurance for the State of North Carolina, and, pursuant to authority of N.C.G.S. § 58-9(5), is authorized and empowered, through the Attorney General of North Carolina, to institute civil actions for a violation of Chapter 58, North Carolina General Statutes.
>
> 2. The defendant, North Carolina Farm Bureau Insurance Agency, Inc., [hereinafter Agency] is a corporation organized and existing under and by virtue of the laws of the State of North Carolina.
>
> 3. Prior to 1972 Sequoia Insurance Company issued to American Agricultural Insurance Company, Inc. an "Errors and Omissions" master group insurance policy number EL-20-10-11.
>
> 4. Neither the Sequoia Insurance Company or the American Agricultural Insurance Agency, Inc. are licensed to do business in North Carolina.
>
> 5. During the period January 1, 1972, to December 31,

1978, and prior thereto, either Charles Houck or Paul Lancaster, both employees of the North Carolina Farm Bureau Mutual Insurance Company, Inc. (not a party to this action) received inquiries from sales agents of the North Carolina Farm Bureau Mutual Insurance Company, Inc., regarding the availability of errors and omissions insurance coverage for their agencies located in various parts of North Carolina.

6. Upon receiving the inquiries from the sales agents either Mr. Houck or Mr. Lancaster would, upon request, forward to said sales agents information regarding errors and omissions insurance coverage available from American Agricultural Insurance Agency, Inc.

7. During the period of time from January 1, 1972, to December 31, 1978, the defendant had no paid employees, salespersons or claim adjusters nor was there any evidence that anyone involved with the defendant was a licensed agent for the defendant, Sequoia Insurance Company, or American Agricultural Insurance Agency, Inc.

8. During the period of time from January 1, 1972, to December 31, 1978, neither the defendant nor anyone involved with defendant had the power or authority to bind coverage or countersign policies of errors and omissions insurance on behalf of American Agricultural Insurance Agency, Inc. [hereinafter AAIAI] or Sequoia Insurance Company under policy number EL-20-10-11.

9. During the period of time from January 1, 1972, to December 31, 1978, the defendant did not adjust any claims under errors and omissions insurance policy number EL-20-10-11.

10. During the period of time from January 1, 1972, to December 31, 1978, the defendant did not receive written applications for insurance under errors and omissions policy number EL-20-10-11.

11. During the period of time from January 1, 1972, to December 31, 1978, the defendant was not selling, binding coverage, or attempting to solicit the purchase of

errors and omissions coverage under policy number EL-20-10-11.

12. While the defendant, through a manager or administrator, transmitted premiums *and other data concerning the errors and omissions coverage* between sales agents of the North Carolina Farm Bureau Mutual Insurance Company, Inc. and [AAIAI], *defendant's role was administrative or ministerial* in nature. (Emphasis added.)

Based on the above findings of facts the court makes the following conclusions of law:

1. During the period of time of January 1, 1972, to December 31, 1978, the defendant did not procure insurance, under policy number EL-20-10-11 on any risk located in North Carolina with an insurance company not licensed to do business in North Carolina.

2. The defendant is not liable for the premium tax imposed by N.C.G.S. § 58-53.3 for any premiums which might have been paid for errors and omissions insurance coverage under policy number EL-20-10-11.

Appellee contends that in the context of an involuntary dismissal, the trial court's findings of fact are conclusive if supported by any competent evidence, "even though there is evidence to the contrary." *Cogdill v. Highway Comm.* and *Westfeldt v. Highway Comm.*, 279 N.C. 313, 320, 182 S.E.2d 373 (1971).

We do not quarrel with appellee's statement of the law, but do question the trial judge's conclusions. A conclusion or inference of law by the trial court is reviewable, even though the trial court denominates it a finding of fact. *Warner v. W & O, Inc.*, 263 N.C. 37, 40, 138 S.E.2d 782 (1964).

Finding of Fact No. 12 acknowledges that the defendant, through a manager or administrator, transmitted premiums and data concerning the errors and omissions coverage between the sales agents of the North Carolina Farm Bureau Mutual Insurance Company, Inc., and AAIAI. The "finding" goes on to conclude that defendant's role was merely administrative or ministerial. Hence, we must look to the record to see whether the acts of defendant in

*transmitting* premiums and data were such acts as constitute procurement. We conclude they were.

We do not find the word "procure" defined in the insurance statutes. Webster's International Dictionary defines the word as meaning ". . . to take care of, to bring about, to obtain."

We find "procure" defined in the case of *Marcus v. Bernstein*, 117 N.C. 31, 34, 23 S.E. 38 (1895), a non-insurance case, as meaning

> 'to contrive, to bring about, to effect, to cause.' Webster Dict. Procure means action . . . .

The record shows that Agency was formed for the purpose of placing those types of insurance or those particular risks of insurance which North Carolina Farm Bureau insurance agents cannot place with the North Carolina Farm Bureau Insurance Company (hereinafter Company). Agency has officers, but no employees, so that any work done by Agency is done by employees of Company. For the use of their employees, Company charges Agency a management fee.

Agency administered the errors and omissions program in North Carolina, receiving a broker's commission constituting 5% of the premiums collected. Prior to 1975, Mr. Houck administered the errors and omissions program. Subsequent to that date, Mr. Lancaster, Associate Director of Sales for Company, administered the plan. The salaries of both Houck and Lancaster were paid by Company.

The record further shows that Agency received data about the program from AAIAI, including application and renewal forms, and forwarded them to prospective applicants. Although the trial judge found that Agency did not *receive* written applications for insurance, we find evidence in the record that insureds *sent* applications for renewals of insurance to the defendant. More importantly for purposes of our analysis, the record unequivocally shows Agency billed the insureds and collected premiums from them. In turn, Agency was billed for premiums by AAIAI, received premium calculation sheets from AAIAI, wrote checks for premiums collected, less 5% commission retained, and forwarded the checks to AAIAI.

Ingram, Comr. of Insurance v. Insurance Agency

The record shows that on occasion Agency received many certificates from AAIAI written on its master policy with Sequoia and forwarded the certificates of insurance to the agents covered. On occasion, Agency returned certificates to AAIAI, calling attention to errors or charges. On other occasions, Agency acknowledged to agents receipt of their requests for information regarding the cost of an errors and omissions policy and described to the applicants the available plans with instructions that, "If you want the insurance, either Plan #1 or Plan #2, all you need to do is let me know, and specify the plan desired."

The performance of defendant Agency, as outlined, involves action, and action is an element of procurement. The trial judge erred in his conclusion that defendant did not procure errors and omissions insurance with an insurance company not licensed to do business in North Carolina, and, therefore, was not liable for the premium tax imposed by G. S. 58-53.3.

We have examined the remaining assignments of error, but do not address them since they may not arise on a subsequent trial of the case.

The decision of the trial court is

Reversed and remanded.

Judge WELLS concurs.

Judge ARNOLD dissents.

Judge ARNOLD dissenting.

The majority opinion is grounded in reason. However, I feel that the trial court's findings are conclusive here, and moreover that its conclusion of law is correct. No doubt, a *procurement* occurred within the plain meaning of the verb "procure." However, as the term "procure" is used in our statutes, I disagree with the majority finding that the defendant procured the insurance. It seems to me that either AAIAI or Sequoia procured the insurance in question. Any confusion as to who procured the insurance might be cleared up, and a better result effected, if the General Assembly were to amend the statute and provide for a tax on the *collection* of premiums paid to companies not licensed to do business in North Carolina.