LUTHER F. CHAPMAN v. MORRIS POLLOCK AND RALEIGH INTERNAL MEDICINE ASSOCIATION, P.A.

No. 8310SC54

(Filed 17 July 1984)

**1. Physicians, Surgeons, and Allied Professions § 15.1— malpractice—expert testimony improperly excluded**

The trial court in a medical malpractice case erred in refusing to allow plaintiff's expert witness to give opinion testimony as to whether defendant's treatment of plaintiff complied with the appropriate standards of care, since the witness was a family practitioner and a professor of family medicine at U.N.C. Medical School, was familiar with standards of practice for family practitioners and internal medicine practitioners, and was therefore qualified to express an opinion; the witness reviewed defendant's office records, plaintiff's hospitalization records, the outpatient records of physicians who saw plaintiff after surgery, and the depositions of both plaintiff and defendant, and the witness therefore had a proper basis for his opinion; and the questions put to the witness were properly worded and framed.

**2. Physicians, Surgeons, and Allied Professions § 17— malpractice—appendicitis—standard of care—sufficiency of evidence**

The trial court in a medical malpractice case erred in directing verdict against plaintiff where it could be inferred from defendant's testimony that the standard of care recognized and followed by doctors in the community required further examinations and treatment when patients with abdominal pain of unknown origin failed to improve after a day or so and got worse, and plaintiff's testimony tended to show that the medical care he received from defendant did not meet that standard. Furthermore, even without defendant's testimony with regard to standards, the case should have been submitted to the jury since appendicitis, its symptoms and treatment, are not unknown to the public generally; it is common knowledge that doctors who have patients with persistent, continuing abdominal pain and other symptoms of appendicitis usually attempt to ascertain the cause of the pain and other signs and symptoms by some means and usually do not remain inactive for two or three days while the condition worsens; and plaintiff testified that he communicated with defendant and his office over a two-day period about the worsening of his condition but defendant failed to examine plaintiff further and failed to return his last phone call.

**3. Physicians, Surgeons, and Allied Professions § 15— malpractice—phone calls to physician—evidence improperly excluded**

In a medical malpractice case where the outcome of the case depended upon whether three phone calls were made by plaintiff patient and received by defendant doctor, the trial court erred in refusing to permit plaintiff to question defendant about his and his office's procedures for getting phone messages to the doctors called and about the fact that a page of the office's phone logbook which contained a reference to a phone call from plaintiff was marked "void."

APPEAL by plaintiff from *Braswell, Judge*. Judgment entered 26 August 1982 in Superior Court, WAKE County. Heard in the Court of Appeals 6 December 1983.

Plaintiff's suit is for negligently failing to diagnose and treat his case of appendicitis.

On 5 March 1978, plaintiff began having abdominal pain and vomited and the next day consulted Dr. Pollock because his regular doctor was out of town. In examining plaintiff Dr. Pollock found tenderness in the periumbilical area, concluded that he had gastroenteritis, prescribed an antispasmodic, and told plaintiff to call back if his condition did not improve. Plaintiff testified that his condition worsened and on 7 March 1978 he telephoned Raleigh Internal Medicine Association, with which organization Dr. Pollock was associated, told them that, and in response thereto Dr. Pollock called him back and prescribed Darvocet, a pain medication. But the medication did not alleviate his condition, according to plaintiff, and on Wednesday, 8 March, he telephoned defendant's office again, but received no return call. Dr. Pollock testified that: He never talked with plaintiff after the initial office visit; prescribed the pain medicine over the phone only because plaintiff informed the office that he had forgotten to request it; received no message from plaintiff on Wednesday; the office phone message ledger, which he examined, contains no account of it. On Thursday, 9 March, plaintiff called his regular physician, Dr. Pierson, who saw him the next morning and put him in the hospital, where emergency surgery was performed, and it was ascertained that plaintiff was suffering from a bowel obstruction caused by an infected and ruptured appendix. During trial the court excluded opinion testimony by plaintiff's only expert witness that the care rendered by Dr. Pollock failed to meet the required standard of care. At the close of plaintiff's evidence the court granted defendants' motion for a directed verdict.

*McCain and Essen, by Grover C. McCain, Jr. and Jeff Erick Essen, for plaintiff appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by James D. Blount, Jr. and Timothy P. Lehan for defendant appellees.*

Chapman v. Pollock

PHILLIPS, Judge.

[1]  Plaintiff first contends that the trial court erred "by refusing to allow plaintiff's expert witness, Dr. Edward J. Shahady, to give opinion testimony as to whether . . . the defendants' treatment of the plaintiff complied with the appropriate standards of care." We agree.

Dr. Shahady was plaintiff's only expert witness. He practices family medicine in Chapel Hill and is also a professor in and chairman of the Department of Family Medicine at the University of North Carolina Medical School. He testified that he was familiar with the standards of practice for family practitioners and internal medicine practitioners as they existed in March 1978 in Raleigh and other similar communities for the care, treatment and diagnosis of abdominal pain and appendicitis and had reviewed the following materials relating to plaintiff's case: The defendants' office records, the plaintiff's hospital records, outpatient records of physicians consulted after surgery, and the depositions of Dr. Pollock and the plaintiff. Following this testimony the proceedings continued as follows:

Q. And in your review of the records and materials that you earlier described have you formed an opinion as to whether those standards of care as they existed in March 1978 for family medicine and internal medicine practitioners, was complied with in the care, treatment and diagnosis that Dr. Pollock gave to Mr. Chapman?

MR. BLOUNT: Objection.

COURT: Sustained.

Q. Have you formed an opinion as to whether that care and treatment given by Dr. Pollock to Mr. Chapman in March 1978 complied with those standards of care?

MR. BLOUNT: Objection.

COURT: Sustained.

. . . .

JURY RETIRES.

. . . .

MR. MCCAIN: I would like to include his last answer in the record.

COURT: Certainly, permitted. Court reporter read it back. Doctor may answer for the record proper.

(Last question read aloud.)

A. Yes, I have formed an opinion.

Q. What is that opinion?

A. That they did not conform to the standard of care.

Evidence was then offered about how the care and treatment rendered by Dr. Pollock failed to comply with the appropriate standard of care. Following a conference between the court and counsel the jury returned and the examination of Dr. Shahady continued as follows:

Q. Dr. Shahady, in forming your opinion as to whether there was compliance with the standards of care, what basis in the materials given you—what facts formed the basis for your opinion?

MR. BLOUNT: Objection.

COURT: Sustained.

Q. Dr. Shahady, in forming your opinion as to whether there was a compliance with the standards of care for internal medicine and family medicine practitioners in March 1978, in the Raleigh or other similar communities, what materials did you consider in forming such an opinion?

MR. BLOUNT: Objection.

COURT: Sustained.

Q. Dr. Shahady in your review of the materials which were given to you for review, did you form an opinion satisfactory to yourself and to a reasonable medical probability, as to whether or not the care and treatment given by Dr. Morris Pollock in March of 1978 to Luther Frank Chapman, complied with the standards of care for that time period, that is March of 1978, in the Raleigh or other similar communities?

MR. BLOUNT: Objection.

COURT: Sustained.

MR. MCCAIN: We would request that answer, your Honor.

. . . .

JURY RETIRES.

COURT: You may now answer the last question for the Record proper only.

A. I do have an opinion.

Q. What is that opinion?

A. That it did not conform to the standards.

COURT: Bring the jury back.

The plaintiff concluded his examination without asking any other questions and there was no cross-examination.

Plaintiff excepted to and assigns as error the exclusion of the above quoted testimony, all of which was excluded pursuant to general objections. When a general objection is sustained it will generally be upheld if there is any reason to exclude the evidence. 1 Brandis N.C. Evidence § 27 (1982). Thus, the several possible grounds for the exclusion must be considered. Certainly, the evidence could not have been properly excluded under the theory that the witness was not qualified as an expert. "An expert witness is one better qualified than the jury to draw appropriate inferences from the facts." *Cogdill v. Highway Commission*, 279 N.C. 313, 321, 182 S.E. 2d 373, 378 (1971). As a licensed physician that treats patients with abdominal complaints, teaches medical students and other doctors with respect thereto, and claims to be familiar with the standards prevailing in the community for treating such complaints, Dr. Shahady was certainly qualified to express an opinion as to whether Dr. Pollock had complied with those standards.

The next possibility for excluding the testimony that occurs to us is that no proper basis for Dr. Shahady's opinions was established. "A physician, as an expert witness, may give his

Chapman v. Pollock

opinion, including a diagnosis, based either on his personal knowledge or observation or on information supplied him by others, including the patient, if such information is inherently reliable even though it is not independently admissible into evidence." *State v. Wade*, 296 N.C. 454, 462, 251 S.E. 2d 407, 412 (1979). We are unable to determine precisely what information Dr. Shahady relied upon in forming his opinion, because plaintiff's attempts to ascertain this information were frustrated by the court's rulings sustaining defense counsel's objections to those questions. Nevertheless, it is plain from Dr. Shahady's earlier testimony that he had reviewed the office records of Dr. Pollock, the patient's hospitalization records, the outpatient records of physicians who saw plaintiff after surgery and the depositions of both the plaintiff and defendant doctor—all of which, under the guidelines laid down by our Supreme Court in *State v. Wade, supra,* a physician can rely upon in forming an expert opinion. Therefore the exclusion cannot be upheld on this ground.

Another possible ground argued for by defendants is that plaintiff improperly framed his questions by asking whether the treatment rendered by Dr. Pollock complied with the standards for family medicine and internal medicine practitioners. According to them, the witness could only be questioned as to the practices and standards of internal medicine specialists, since that is Dr. Pollock's specialty. This is not and cannot be the law. If it was, many of those who practice in narrow specialties would be immunized from accountability for their incompetence or derelictions due to the inability of their patients to get a specialist in their field to testify against them, which not only would be unjust, but unjustifiable, since doctors in one field can often throw light on what is proper treatment in another. The anatomical, physiological, and bacteriological problems relating to human illnesses and their treatment do not change because a medical specialist in one field instead of another is the examining or treating physician. Thus, though Dr. Pollock can only be held to the standards of internal medicine specialists, evidence as to what other experienced, qualified medical doctors do in treating the same illness is certainly relevant thereto. In the unlikely event that a patient manifesting the signs and symptoms of appendicitis required one treatment when examined by an internist and another when examined by a family practitioner, Dr. Pollock could have

so testified; but that would not have eliminated the admissibility of Dr. Shahady's testimony, the weight of which would have been for the jury. But Dr. Pollock did not so testify; his earlier testimony was that the standards of care for diagnosing and treating appendicitis are the same for family medicine and internal medicine practitioners. This, in effect, left the argument made now without basis.

The only other possible ground for excluding the testimony that occurs to us is the wording of the questions. But though plaintiff's questions were not as precisely formed as they might have been, their wording was reasonably adequate under the circumstances that existed, and the evidence could not have been properly excluded on that ground. Since no proper basis for excluding Dr. Shahady's testimony has been found, we conclude that the court erred in rejecting the testimony and plaintiff is entitled to a new trial. The prejudicial effect of the exclusion is plain.

[2] Plaintiff next contends that the court erred in directing a verdict against him in that the evidence presented raised a factual dispute for the jury even without the testimony of Dr. Shahady. It is rudimentary, of course, that in determining this question plaintiff's evidence must be taken as true and considered in the light most favorable to him, and that the dismissal can be upheld only if the evidence so viewed is insufficient as a matter of law to justify a verdict. Even though expert testimony is usually needed to establish what the practices and standards of doctors in a particular specialty and area are, "[w]hen the standard of care . . . is once established, departure therefrom may, in most cases, be shown by non-expert witnesses." *Jackson v. Mountain Sanitarium, et al.*, 234 N.C. 222, 227, 67 S.E. 2d 57, 62 (1951). Plaintiff contends that Dr. Pollock's own testimony that patients with continuing abdominal pain usually require continuing treatment of some kind showed what the proper standard of care was, and that plaintiff's testimony that such treatment was not received showed that the standard was departed from. The testimony of Dr. Pollock that plaintiff relies upon in this connection was as follows:

Q. Did you want to talk to him to find out about the nature of the pain and so forth, before you prescribed pain medication for it?

A. I felt that had his pain gotten much worse that he would have communicated that to us and if that were the case, then I would have, as we had seen him the day before, had him come back that day if we had an indication that his pain had gotten worse.

.

\*    \*    \*

Q. And your advice was to call, I believe you said, if not better?

A. Right.

Q. Why did you want him to do that?

A. Oftentimes when we see a patient early-on, and appendicitis is particular notorious for this, the symptoms will change and if in that case we would need to see him again, if there was evidence that he was getting worse, and consider other diagnostic alternatives.

\*    \*    \*

Q. Dr. Pollock, yesterday I was asking you about the advice that you gave to Mr. Chapman when he left your office on March 6, 1978, about to call if no better; was that important advice?

A. Yes.

Q. Why?

A. If his symptoms were to change significantly, because at the time that I had seen him initially I did not feel that he had an acute abdomen, but early-on. In any kind of problem that can cause an acute abdomen, there may not be much in the way of physical findings, so that time is an important factor and the symptoms may change so that we would like to keep a close follow-up and have the patients report to us if they are having problems.

.  .  .  .

Q. And it is correct that Mr. Chapman did call and report that is it not?

A. Mr. Chapman called and reported that he forgot to ask for pain medicine the day before, which was the note that is documented in our notes. The fact that he called to tell us that he forgot to ask for the medicine, did not indicate to me that he had gotten worse.

Although Dr. Pollock did not specifically state that the standard of care then recognized and followed by doctors in Raleigh required further examinations and treatment when patients with abdominal pain of unknown origin failed to improve after a day or so and got worse, that is clearly inferable from his testimony. And since plaintiff's testimony tended to show that the medical care that he received from Dr. Pollock did not meet that standard, it was improper to take the case from the jury in any event.

But leaving Dr. Pollock's testimony about standards aside, as has been noted already not all things about the practice of medicine have to be testified to by a doctor. *Jackson v. Mountain Sanitarium, supra.* The proper medical standards for treating some illnesses and conditions are matters of common knowledge. "There are many known and obvious facts in the realm of common knowledge which speak for themselves, sometimes even louder than witnesses, expert or otherwise." *Gray v. Weinstein,* 227 N.C. 463, 465, 42 S.E. 2d 616, 617 (1947). "When the evidence of lack of ordinary care is patent and such as to be within the comprehension of laymen, requiring only common knowledge and experience to understand and judge it, expert testimony is not required." *Wilson v. Martin Memorial Hospital, Inc., et al.,* 232 N.C. 362, 366, 61 S.E. 2d 102, 105 (1950). Appendicitis is not an obscure medical problem unknown to people generally and the practices of physicians in undertaking to diagnose it are not known only to them. It is a matter of common knowledge, we believe, that doctors who have patients with persistent, continuing abdominal pain and other symptoms of appendicitis usually attempt to ascertain the cause of the pain and other signs and symptoms by some means and usually do not remain inactive for two or three days while the conditions are not only continuing, but getting worse. And it is also commonly known that when the condition is appendicitis, simple, usually effective means for ascertaining that and removing the diseased appendix before it ruptures and spreads infection throughout the body are available to the profession and usually employed. Precisely which test or means to use and when

in making the diagnosis is, of course, a medical matter that is not commonly known; but that it is improper for a doctor to do nothing under such circumstances is, since such conditions, if untreated, entail imminent and grave danger to life and health. In regard thereto, plaintiff testified that: He informed the Raleigh Internal Medicine Association on Tuesday morning his condition had worsened; when Dr. Pollock called him back pursuant thereto he told him the same thing, and that without examining him again or doing anything else, the doctor merely prescribed a pain medication. And upon him again telephoning the Association office on Wednesday morning that his ailments had worsened, he was told that Dr. Pollock would call him back, but he failed to do so. Even in the absence of expert testimony about proper standards of care, this evidence was sufficient, in our opinion, to support the inference that Dr. Pollock's failure to examine and treat plaintiff further under the circumstances testified to was contrary to medical standards approved and generally followed by the profession, and thus negligent.

[3] Plaintiff also contends that several other lines of evidence material to his case were improperly excluded by the trial court. With one exception these questions will not be discussed, as they are unlikely to arise upon retrial. Critical to the outcome of the case, however, is whether plaintiff telephoned defendants' office on three occasions following Dr. Pollock's examination of him, as he testified; indeed, the outcome of the case depends much more on whether these calls were made and received than it does on evidence about proper standards of medical care, discussed at length in both briefs. Because, except for the first call, which defendants contend imparted no information about his condition and merely requested a prescription for pain medication, the defendants deny that the calls were made or received; whereas, the medical standards that apply to each eventuality are scarcely debatable. If the calls were not made to the Association office as plaintiff contends, nothing further could have been conceivably expected of Dr. Pollock and no basis for imposing liability on the defendants would exist. On the other hand, if the calls were made and received by either Dr. Pollock or the Association office, which he held out to his patients as the place to telephone and leave messages, then it is equally clear that duty required Dr. Pollock to take some action commensurate with the information received

or left with his agent. Nevertheless, despite the dispute and its importance, plaintiff was not permitted to question Dr. Pollock about his and the Association's office procedures for getting telephone messages to the doctors called and about the fact that a page of the Association's phone logbook which contained a reference to a telephone call from plaintiff was marked "void." Evidence about these and related matters was relevant and material to this pivotal issue and it was error to exclude it.

A new trial is therefore ordered consistent with this opinion.

New trial.

Judges ARNOLD and JOHNSON concur.